**MAINE HUMAN RIGHTS COMMISSION et al.**

v.

**CITY OF AUBURN et al.**

Supreme Judicial Court of Maine.

Argued Jan. 12, 1981.

Decided Feb. 17, 1981.

Pine Tree Legal Assistance, Inc., Harold Lichten, Lewiston (orally), for Connie L. Hall.

Isaacson, Isaacson & Hark, Robert S. Hark, Lewiston (orally), for Marymay Bernard.

William Kelleher, Asst. Atty. Gen., Augusta (orally), for Maine Human Rights Commission.

Linnell, Choate & Webber, G. Curtis Webber, Auburn (orally), for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

In its decision issued on December 7, 1979, *Maine Human Rights Comm'n v. City of Auburn*, Me., 408 A.2d 1253 (1979), the Law Court sustained the appeal of plaintiffs, Maine Human Rights Commission, Connie Hall, and Marymay Bernard, from the judgment of the Superior Court (Androscoggin County) denying them any relief in their suit alleging sex discrimination in the hiring practices of the police department of the City of Auburn. The Law Court remanded the case to the Superior Court for retrial in accordance with its directives on the special methodology to be used in evaluating the evidence introduced in cases of alleged unlawful employment discrimination under the Human Rights Act, 5 M.R.S.A. § 4572(1)(A) (1979).

Defendants, who will here be collectively referred to as the City of Auburn, now appeal from the subsequent judgment and supplementary order of the Superior Court awarding plaintiffs the following relief:

1) permanently enjoining the City of Auburn from utilizing the existing oral interview process in screening police officer candidates, and ordering that the City devise and implement a nondiscriminatory examination and hiring procedure for its police department;

2) ordering that the City of Auburn employ plaintiffs Hall and Bernard as police officers at prevailing wage rates and benefits with seniority based on a hiring as of November 13, 1978; and awarding plaintiff Hall back pay in the amount of $5,227.20 and plaintiff Bernard back pay in the amount of $15,971.47; and

3) ordering the City of Auburn to pay each plaintiff civil penal damages in the amount of $100.00.

On the present appeal[1] we find no reversible error in the Superior Court's conclusion that the City of Auburn's practices and procedures for hiring police officers unlawfully discriminated against women, but we

---

1. By an order dated November 10, 1980, the Law Court, having put this appeal on an expedited schedule of briefing and oral argument, stayed the Superior Court's orders pending final decision.

hold that the court's order that mandated hiring of the individual plaintiffs must await their passing court-validated agility and psychological examinations. We also find error in the Superior Court's determinations of the effective date of seniority rights and the amount of back pay.

1. *The Superior Court's Finding of Unlawful Sex Discrimination.*

■ The Superior Court found that plaintiffs had established a prima facie case of discrimination under all three modes of proof outlined in our prior opinion, *supra*, and further found that the City of Auburn had not come forth with an explanation that would rebut that prima facie case. The lower court's opinion analyzed in particular detail the evidence in support of the "disparate impact" mode of proof, and its factual finding of discrimination against women in the hiring of police officers by the City of Auburn under that mode of proof is well supported by the record. That finding was based upon a statistical analysis of the negative correlation between the female applicants' placement on the oral interview and their scoring on the written examination. The Superior Court concluded, "[w]hether this court looks to general statistics or applicant pool statistics, the conclusion is inescapable, that the oral interview process affects female applicants *more harshly* than male applicants." The City of Auburn sought to explain the disparate impact of the oral examination by arguing the necessity for prior police experience as a qualification for employment. Concluding that prior police experience was not a "business necessity," *see Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971), and thus rejecting the City's explanation, the Superior Court found that plaintiffs had met their ultimate burden of persuasion on the issue of unlawful discrimination.

The Superior Court also determined that unlawful sex discrimination had been proved by the disparate treatment and past pattern modes of proof. As found by the court below, the job advertisements "used up to and including the subject controversy invite applicants to 'measure up as a man'," and at least one responsible city official had referred to a woman police officer as a "luxury" that could not be afforded and as "just a pretty face." A specifically identified police captain told plaintiff Hall, according to her unchallenged testimony, that "we at the Auburn police department" are not ready for female officers as yet. Furthermore, statistical evidence showed "that the height requirements in use [by the Auburn police department] until recently excluded 94% of the women as opposed to 19% of the men and that the weight requirements excluded 50% of the women as opposed to 35% of the men." Statistical evidence also showed that women comprise about 56% of the service workers in Androscoggin County and about 8% of the protective service workers in the nation; in contrast, only one woman has been certified for an Auburn police job since 1974, and that certification was a qualified one and never eventuated in the applicant's being hired. While the Superior Court's "disparate impact" analysis focused principally upon the oral examination given by the Civil Service Commission, the evidence, when analyzed under the other two modes of proof, supported the court's finding of unlawful discrimination generally in Auburn's police recruitment.

Supported as they are in the record evidence, the trial court's findings of unlawful sex discrimination are immune from reversal on appeal under the controlling "clearly erroneous" test of M.R.Civ.P. 52(a).

2. *Appropriate Relief.*

■ At oral argument, counsel for the City contended that the order enjoining further use of the 1978 oral interview process and directing them to devise and implement a nondiscriminatory examination and hiring procedure for its police department has been mooted because it has changed that oral interview process. The fact that the defendant in an equity case has ceased its unlawful conduct does not deprive the equity court of power to hear and determine the case. *United States v. W. T. Grant Co.*, 345

U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Since one of the purposes, if not the principal purpose, of an injunction is to prevent future violations, the power of a court of equity to grant such an order survives discontinuance of the unlawful action. *Id.* at 633, 73 S.Ct. at 897. In any event, there is no showing that even the modified oral examination complies with the law; and furthermore, the Maine Human Rights Commission, having proved that unlawful discrimination has existed in the Auburn police hiring process, is entitled to positive action on the City's part to assure the future elimination of any unlawful bias anywhere in that process. An equity court should proceed with restraint in issuing an injunctive order against a governmental body. *See Waite v. Macy*, 246 U.S. 606, 609, 38 S.Ct. 395, 396, 62 L.Ed. 892 (1918) (Holmes, J.). Oftentimes a mere declaration of legal rights or of legal rules will suffice to govern future official action. *Cf. Kelly v. Curtis*, Me., 287 A.2d 426 (1972). There is nothing here to suggest, however, that the Superior Court was not sensitive to those established equitable principles; and since it retained full power to issue the injunction even though some modification in the City's interview process apparently had occurred, no error exists in the first paragraph of the Superior Court's judgment that is here under review.

█ Nor is there any error in the third paragraph of that judgment, which ordered the City of Auburn to pay to each of the complainants, Hall and Bernard,[2] civil penal damages in the amount of $100. Unlawful discrimination by the City of Auburn having been found, the civil penal damages could validly be imposed under 5 M.R.S.A. § 4613(2)(B)(7) (1979), whether or not any other relief was granted the individual complainants.

█ We do, however, find it necessary to vacate the second paragraph in the Supe-

rior Court's order. It was premature in mandating that the City hire the individual plaintiffs and give them back pay. An action arising under the Human Rights Act is equitable in nature, and any relief thereunder is granted only through the exercise of the sound discretion of the Superior Court justice. *Maine Human Rights Comm'n v. City of Auburn, supra* at 1261. In the exercise of that discretion, it is the duty of a court of equity to give due consideration not only to the rights and circumstances of the particular plaintiff seeking relief, but to the public interest as well. *Federal Power Comm'n v. Panhandle Eastern Pipe Line Co.*, 337 U.S. 498, 500, 69 S.Ct. 1251, 1253, 93 L.Ed. 1499 (1948). At least two considerations of the public interest are implicated here. First, the Human Rights Act declares the legislative policy demanding the end of unlawful sex discrimination and its consequences in employment. *See* 5 M.R.S.A. §§ 4552, 4571 (1979). The injunctive relief granted the Commission against the City of Auburn is the primary instrument for advancing that public policy, but that public goal must also be given consideration in determining the relief to be accorded private victims of unlawful sex discrimination. At the same time, the public served by the Auburn Police Department has an interest in having on the police force only individual officers who have those qualifications proven necessary to enable them to carry out their duties both effectively and with safety to the public and to other officers.

█ Once it had determined that plaintiffs Hall and Bernard had been the victims of unlawful discrimination, the Superior Court, applying the rule followed by most federal courts, *see Day v. Matthews*, 530 F.2d 1083 (D.C.Cir.1976); *Meadows v. Ford Motor Co.*, 510 F.2d 939 (6th Cir. 1975), placed upon the City of Auburn the burden of proving by clear and convincing evidence that absent any unlawful sex discrimination

2. We construe the Superior Court's judgment to order civil penal damages to be paid only to the individual plaintiffs, Hall and Bernard. We thus have no occasion to decide, or even to intimate an opinion on, the question whether the legislature intended by 5 M.R.S.A. § 4613(2)(B)(7) (1979) to authorize the Maine Human Rights Commission as a "complainant" to recover civil penal damages.

those female applicants for police jobs would not have been hired in any event. That federal rule shifts the burden of proof to the employer whose unlawful discrimination has made it necessary to undertake the uncertain task of reconstructing what would have happened in the past, *Day v. Matthews, supra* at 1086, had there been no discrimination. That rule also holds the employer to the enhanced standard of "clear and convincing" proof,[3] in order to advance the statutory purpose of "the rooting out of every vestige of employment discrimination." *Id.* We approve the Superior Court's application of the federal rule in determining back pay under our Maine statute, modeled as it is on the federal antidiscrimination acts. *See Maine Human Rights Comm'n v. City of Auburn, supra* at 1261.

On the record before it, the Superior Court in applying the federal rule concluded that the City had not proved by clear and convincing evidence that Hall and Bernard would in any event have failed to be hired because there were better qualified male applicants for all vacancies in the police department. Although the court found that the two male officers first hired in November 1978 had superior qualifications, it held that no such conclusion as to any other male applicant had been proven by clear and convincing evidence. Thus, prima

facie, Hall and Bernard were entitled to the two vacancies in the police department that occurred next after the two filled in November of 1978.

The Superior Court's analysis stopped there, and it ordered the women hired at once, with retroactive seniority rights, and awarded them back pay. In so ordering their unconditional hiring, the Superior Court omitted any express consideration of the public interest in having police officers with necessary qualifications for effective and safe police work. The Superior Court should be given an opportunity to correct that omission.

■ Plaintiffs Hall and Bernard had, as all other examinees, passed a medical examination before being allowed to take the written and oral examinations given by the Auburn Civil Service Commission. Because that commission excluded them from the certified list, however, they never have taken the police department's agility[4] and psychological examinations and have never been interviewed by the police chief. Thus, they have never cleared three hurdles that the City of Auburn requires of all other persons hired as police officers.[5] If the City of Auburn is correct in its contention on appeal that those post-certification tests truly measure qualifications necessary to effective and safe performance of police

---

**3.** Since we turn to federal antidiscrimination law for guidance in interpreting and applying the Maine Human Rights Act, we adopt, for the present limited purpose, the federal conception of "clear and convincing" proof. Generally, under the law of Maine the adjectives "clear and convincing" describe "the *quality* of the evidence rather than the required state of mind of the factfinder as to the strength of belief induced by the evidence," namely, evidence that "by its nature has high capability of inducing belief." (Emphasis in original) *Horner v. Flynn,* Me., 334 A.2d 194, 199 (1975). *But see State v. Cefalo,* Me., 396 A.2d 233, 238 n. 11 (1979). In contrast, federal law uses "clear and convincing" to focus upon "the degree of confidence our society thinks [a factfinder] should have in the correctness of factual conclusions for a particular type of adjudication." *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979), *citing In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970).

**4.** It was suggested at oral argument that plaintiff Hall had taken and passed the agility test, but apparently evidence of that fact was not before the Superior Court prior to its decision of May 22, 1980.

**5.** The agility test is, and has been since prior to 1978, required to be passed by all new hirees in the Auburn police department. Present officers hired prior to the time the agility test was substituted for the earlier height and weight requirements have not been required to pass the new test. That fact, however, does not prevent the City of Auburn from requiring Hall and Bernard, or any other new hirees, to pass the agility test, provided that it is job-validated in the manner described later in this opinion. *See Hardy v. Stumpf,* 21 Cal.3d 1, 145 Cal.Rptr. 176, 576 P.2d 1342 (1978) (tests for police officer).

duties, the public interest strongly urges that the court of equity fashion a remedy to encompass those tests or their essential substance. However much plaintiffs Hall and Bernard may already have been victimized by other parts of the City's police hiring process, they cannot rightfully expect to be employed without passing the later tests required of all other hirees—so long as those later tests are themselves free of any unlawfully discriminatory features or consequences. If those post-certification tests are job-validated in that they are "predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job ... for which [the] candidates are being evaluated," *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975), the relief fashioned by the Superior Court should impose Hall's and Bernard's successful passing of those tests as a condition precedent to their employment as Auburn police officers. We remand this case to the Superior Court so that it may, after hearing, consider whether its judgment should be modified to assure that the public interest in a safe and effective police force is appropriately respected.

On remand, continuing in this relief phase of the case, the Superior Court having previously determined that women are unlawfully discriminated against in the recruitment of Auburn police officers, the City should reasonably bear the burden of establishing the job-validity of its agility and psychological tests.[6] *Cf. Day v. Matthews, supra* (burden of proof on employer on back pay question). However, the City of Auburn need prove the tests' job-validity only by a preponderance of the evidence. The beneficent purposes of the antidiscrimination statute are adequately served by

shifting the burden of proof to the employer without also imposing an enhanced standard of proof. Since the job-validity of the agility and psychological tests is a present, objectively determinable fact, we see no reason for both shifting the burden of proof to the employer and also requiring proof by "clear and convincing evidence," as is done by the federal rule declared in *Day v. Matthews, supra*. If the City succeeds in proving the job-related validity of only an agility or a psychological test of less difficulty than that required of other applicants, the court should condition its hire order upon successful completion of only that lesser examination. On the other hand, if either Hall or Bernard submits to, and passes, the same agility and psychological examinations given all other hirees, she will be entitled to be immediately hired without waiting for the outcome of the validation hearing on remand.

A special problem exists in regard to the interview with the police chief, the final step in the standard process for hiring Auburn police officers. The final hiring decision is exclusively the police chief's. In his interviews, the police chief seeks to identify those applicants who would not willingly assume the demanding schedule of police work or who do not measure up in the police chief's judgment as well as they have scored in the Civil Service Commission's examinations. This final test is inevitably subjective; but we cannot say on the record we have before us that it is necessarily inappropriate as a general proposition that the head of a relatively small department should be able to select among applicants, certified to him by the Civil Service Commission, on the basis of his judgment as to their relative potential for performing well as police officers. At least in the

**6.** As the court in *Craig v. County of Los Angeles*, 626 F.2d 659, 662 (9th Cir. 1980) (tests for deputy sheriff), explained, the validation process involves three distinct steps. First, the employer must specify the specific trait or characteristic which the selection device is being used to identify or measure. Next, the employer must establish that that particular trait or characteristic is an important element of work behavior. Finally, the employer must demonstrate by "professionally acceptable methods" that the selection device is "predictive of or significantly correlated" with the element of work behavior identified in the second step. *See also Blake v. City of Los Angeles*, 595 F.2d 1367, 1378 (9th Cir. 1979) (tests for police officer); *Williams v. City and County of San Francisco*, 483 F.Supp. 335, 342 (N.D.Cal.1979) (tests for juvenile probation officer).

absence of evidence that the police chief's subjective judgment has itself been used for the purpose of unlawfully discriminating against women, or has had a disparate impact upon them as a class, this court is unwilling to lay down any comprehensive proscription against use of the police chief's interview in hiring police officers. In the present case, however, there is no satisfactory way by which that final stage can be interposed between plaintiffs Hall and Bernard and the jobs they desire as Auburn police officers. The Auburn police department, which the police chief heads, authorized or acquiesced in use for several years of a job advertisement that was overtly discriminatory against women. In answer to plaintiff Hall's inquiry as to her chances of becoming a patrol officer, a police captain responded that the Auburn police department was not ready for females as yet. The police chief has been a named defendant and a principal witness in litigation initiated by those women applicants well over two years ago and pursued persistently by them through several hearings and two appeals. It would be difficult for anyone in his position to be completely neutral in appraising the qualifications of Hall and Bernard, and it would be even more difficult for those women and their supporters to perceive the police chief's decision as even-handed. Therefore, under the particular circumstances of the case at bar, a hire decision by the Auburn police chief will not be interposed as a condition precedent to the Superior Court's order that Hall and Bernard be employed as Auburn police officers. This ruling should not, however, be taken as any precedent in a case involving different factual circumstances.

■ In connection with any hire order that the Superior Court ultimately enters, it will have to determine the effective date of the individual plaintiffs' seniority rights and the amount of any back pay award. In

the Superior Court's judgment here on review, it erred on both scores. As discussed earlier, the City of Auburn successfully carried its "clear and convincing" burden of proof that the two officers hired in November 1978 had qualifications superior to those of Hall and Bernard; yet the Superior Court measured the women's seniority rights and back pay from November 13, 1978. On the basis of the lower court's own findings, that effective date should be no earlier than that time when the police department filled its next two vacancies.[7]

The amount of back pay to be awarded depends both upon that effective date and also upon the extent of deductions that must be applied against what the women plaintiffs would have earned as Auburn police officers during the pertinent period. The Human Rights Act merely provides that remedies under the Act may include an "order to employ ... a victim of unlawful employment discrimination, with or without back pay." 5 M.R.S.A. § 4613(2)(B)(2) (1979). Title VII, upon which the Maine Human Rights Act is modeled, lists the same possible remedy, but goes on expressly to require that

> Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

42 U.S.C. § 2000e–5(g) (1970). That provision of Title VII is declaratory of the case law that developed under the National Labor Relations Act, which, like the Maine Human Rights Act, does not spell out the deductions required in computing a back pay award. See Davidson, *"Back Pay" Awards under Title VII of the Civil Rights Act of 1964,* 26 Rutgers L.Rev. 741, 742 (1973). Deduction for actual interim earnings or alternatively those earnings that plaintiffs could have earned with reasonable diligence comports with the common

---

7. The record does not satisfactorily identify when the next two job vacancies opened up in the Auburn police department. Since the facts or the future legal determinations may prevent the issue from ever arising or, if it does, the parties may resolve it without court interven-

tion, we express no opinion on what should be the effective date for starting back pay for each of the two women if the next two vacancies after November 1978 did not occur substantially simultaneously.

law contract principle of mitigation of damages. *Id.* at 769. The equity court in formulating relief for unlawful discrimination under the Maine Act can well be guided by those federal and common law parallels.

In computing plaintiff Hall's back pay award ($5,227.20), the Superior Court correctly deducted her actual earnings on another job during the pertinent period. Since there is nothing in the record to suggest that she could have with reasonable diligence earned any more, her actual earnings were appropriate for use in the back pay computation. In computing plaintiff Bernard's back pay award ($15,971.47), however, the Superior Court made no deduction of any sort. She held no job during the same period and so had no "interim earnings." Nonetheless, the equity court should reduce the award by whatever amount she could with reasonable diligence have earned during that time. The City bears the burden of proving the facts to enable the court to determine the appropriate deduction.[8] *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978); *E. E. O. C. v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 926 (S.D.N.Y.1976), *aff'd*, 559 F.2d 1203 (2d Cir. 1977).

On remand, the Superior Court should, as promptly as possible, conduct hearings for the purpose of fashioning an interim order specifically identifying job-validated agility and psychological examinations to be given to plaintiffs Hall and Bernard. If the women successfully complete those tests, the Superior Court should then enter a final order that the City of Auburn hire them as police officers with seniority and back pay determined in the way outlined in this opinion.

The entry will be:

Paragraphs 1 and 3 of the Superior Court's judgment entered on May 22, 1980, affirmed.

Paragraph 2 of its judgment entered on May 22, 1980, and supplemented by order entered on August 12, 1980, vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

8. The Superior Court was completely correct in rejecting the City's claim that Bernard's trust income, by virtue of which she did not find it necessary to work during the pertinent period, should be applied as a deduction in computing the back pay award. It is only the compensation that plaintiff Bernard received or could reasonably have received on another job that is relevant in determining what she lost by being unlawfully barred from a police job.