**Stephen ROZANSKI, et al.**

v.

**A–P–A TRANSPORT, INC.**

Supreme Judicial Court of Maine.

Argued April 30, 1986.

Decided July 11, 1986.

Angoff, Goldman, Manning, Pyle, Wanter & Hiatt, Harold L. Lichten (orally), Boston, Mass., for plaintiff.

Preti, Flaherty & Beliveau, Michael G. Messerschmidt (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Defendant A–P–A Transport, Inc., an interstate trucking company operating in Maine, appeals a judgment of the Superior Court (Androscoggin County) that (1) held that A–P–A had violated the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4632 (1979 & Supp.1985), by refusing plaintiffs Stephen Rozanski and Ronald Berube nonprobationary employment as truck drivers because of their latent lower back defects, and (2) awarded reinstatement, back pay, and attorney's fees to plaintiffs. On appeal to this court the trucking company urges that the Superior Court erred in affording the protection of the Maine Human Rights Act to these plaintiffs, in rejecting all of the company's affirmative defenses, and in fashioning the relief to which plaintiffs are entitled as a result of the company's discrimination against them. We affirm the Superior Court judgment in all respects, with the sole exception of its estimation of plaintiffs' lost wages for the period after the record closed as of March 30, 1985. We remand solely for the purpose of having the Superior Court reconsider that limited determination.

In the fall of 1981 Rozanski and Berube were hired as truck drivers at the newly opened A–P–A terminal in Lewiston. Both men, then in their early thirties, were experienced truck drivers and neither had experienced previous back problems. Pursuant to a collective bargaining agreement governing employment with A–P–A, Rozanski and Berube were subject to a 30–day probationary period, which they agreed to extend an additional 30 days. After that probation, they could be terminated only for cause under the collective bargaining agreement. Both men successfully completed A–P–A's employment examinations, save one. During the last week of their probation, Rozanski and Berube were informed that they had failed A–P–A's pre-employment lower back x-ray screening. Those x-rays revealed that Rozanski had a small osteophyte or spur on his spine and that Berube had a condition known as spon-dylolysis. On the sole basis of those x-rays, A–P–A terminated Rozanski and Berube from employment.

Following their termination, the employees won a ruling from the Maine Human Rights Commission that A–P–A had violated the Maine Human Rights Act by terminating them because of physical handicap. Unable to obtain conciliation with A–P–A, the employees commenced the present action in the Superior Court. Based on four and a half days of hearings and voluminous documents entered in evidence, the Superior Court held that the employees had proved a prima facie case of discrimination by A–P–A on account of physical handicap in violation of the Maine Human Rights Act. It found that Rozanski and Berube were qualified to perform the duties of A–P–A truck drivers and that they were terminated solely because of the company's mistaken belief that their back conditions created a greater likelihood of disability if they engaged in heavy work such as truck driving. From the medical evidence before it, the court concluded that neither Rozanski's spurring condition nor Berube's spondylolysis is of any predictive value for future back injury, that neither condition alone is likely to result in a person's disability, even when that person is engaged in heavy work, and that given each employee's age, physical condition, and work and activity history, his risk of lower back injury or disability is even less likely. Finally, the court rejected all of the affirmative defenses raised by A–P–A. Accordingly, it entered the following order:

1. Judgment to be entered for plaintiffs.

2. Defendant A–P–A is ordered to hire plaintiffs as soon as is reasonably practicable, without defendant having to lay off any employees presently employed, with plaintiffs to have status relating back to January 12, 1982, for purposes of seniority, future layoffs and other determinations based on date of commencement of employment.

3. Plaintiffs to have judgment for back pay to August 3, 1985, plus interest and costs, as follows: plaintiff Rozanski, $86,548.93; plaintiff Berube, $80,256.19.

4. Defendant to continue to pay said wages to plaintiffs, in amounts consistent with this Judgment and Order, until defendant offers to each respective plaintiff a position substantially equivalent to the positions originally applied for by plaintiffs.

The Superior Court stayed its order pending appeal to the Law Court.

### I. *Federal Preemption of State Law*

■ We reject A–P–A's first argument, as did the Superior Court, that the Interstate Commerce Act, 49 U.S.C.A. § 304 (1963), and the Department of Transportation Act, 49 U.S.C.A. § 1655 (1976 & Supp. 1986), preempt application of the Maine Human Rights Act in the case at bar. Federal law may preempt state law in one of three ways.

First, in enacting the federal law, Congress may explicitly define the extent to which it intends to preempt state law. Second, even in the absence of express preemptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government. Finally, if Congress has not displaced state regulation entirely, it may nonetheless preempt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 468, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399, 406 (1984)) (citations and quotation omitted). We can find nothing in those federal statutes that preempts the Maine Human Rights Act's prohibition against discrimination in the work place. First, A–P–A does not point to any provision in the Interstate Commerce and the Department of Transportation Acts in which Congress explicitly expressed an intent to preempt application of a state's laws prohibiting employment discrimination to any employer operating in that state, including a federally regulated motor carrier such as A–P–A. Second, A–P–A does not show that by enacting either statute Congress indicated an intent to occupy the entire field regarding the physical qualifications of truck drivers.

■ Finally, A–P–A cannot be heard to complain that compliance with both state and federal law is impossible. Although in the case at bar both the federal statutes and the Maine Human Rights Act touch on the physical qualifications of Rozanski and Berube as truck drivers, they address two entirely separate and independent objectives and therefore complement rather than conflict with one another. Department of Transportation regulations, 49 C.F.R. § 391 (1985), promulgated pursuant to the federal statutes, set physical qualifications that are designed solely to promote the safe operation of trucks on the highways. In contrast, the Maine Human Rights Act bars employment discrimination on the basis of certain physical qualifications. Nowhere has A–P–A shown that the Maine law in any way conflicts with the general objective or the specific requirements of those federal regulations. Nor could it on the facts of this case, since both Rozanski and Berube meet federal physical standards and both hold federal drivers' certificates. *See Colorado Anti-Discrimination Commission v. Continental Airlines,* 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963) (extensive federal regulation barring discrimination by an interstate airline does not preempt Colorado from also barring discrimination in the hiring and firing of that airline's employees). *Cf. Higgins v. Maine Central R.R.,* 471 A.2d 288, 292 (Me.1984) (application of Federal Employers' Liability Act does not excuse railroad company from full compliance with Maine Human Rights

Act). Maine employees of an interstate trucking company are entitled to the same protection of the Maine Human Rights Act as other employees in Maine.

## II. *Scope of the Maine Human Rights Act*

A–P–A's next argument is that the employees are not handicapped within the meaning of the Maine Human Rights Act. The Act defines "physical or mental handicap" as "any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness...." 5 M.R.S.A. § 4553(7–A) (1979). Both Rozanski and Berube fit within the express terms of that definition since the asymptomatic condition of each of the men constitutes a "malformation" of the spine. Their conditions are indistinguishable from that of the railway employee involved in *Maine Human Rights Commission v. Canadian Pacific Ltd.*, 458 A.2d 1225 (Me.1983), who because of his asymptomatic heart murmur was deemed to be handicapped within the meaning of the Act. Similarly, Rozanski's and Berube's latent back conditions, which were the sole ground for their termination, are physical handicaps that entitle them to the protection of the Maine Human Rights Act.

## III. *Affirmative Defenses*

Before the Superior Court, A–P–A raised three affirmative defenses—safety, bona fide occupational qualification, and alternative justification for Berube's termination—to avoid liability under the Maine Human Rights Act. We can find no reversible error in the Superior Court's rejection of all of these defenses.

### A. *Safety*

The Maine Human Rights Act does not require an employer to make a reckless hiring decision. The law permits discrimination against the handicapped where the employee, because of the physical or mental handicap, is unable to perform his duties or perform those duties in a manner which would not endanger the health or safety of the employee or the health or safety of others or [is unable] to be at, remain or go to or from the place where the duties of employment are to be performed.

5 M.R.S.A. § 4573(4) (1979). To raise the safety defense, however, an employer must first have performed "individual assessments of the relationship between an employee's handicap and the specific legitimate requirements of his job." *Maine Human Rights Commission v. Canadian Pacific Ltd.*, 458 A.2d at 1234. That threshold requirement "imposes upon the employer the burden of establishing that it had a factual basis to believe that, to a reasonable probability, the employee's physical handicap renders him unable to perform his duties or to perform such duties in a manner which will not endanger his own health or safety or the health or safety of others." *Id.*

A–P–A's x-ray screening procedure is not the individual assessment required by the *Canadian Pacific* case. We agree with the Superior Court that

the safety defense fails here, since defendant did not really assess either Rozanski's or Berube's handicap and the relationship of that handicap to the truck driving job on an individualized basis. The x-ray alone was the basis of the rejection. No clinical examination was performed, no history taken by the A–P–A doctors. Such examination and history would have revealed the excellent physical condition of both plaintiffs, and the fact that both performed the duties of heavy duty truck driving with no safety or health problems. Rather, the decision to reject plaintiffs was categorical, based on the condition appearing on the x-ray, without regard to the other relevant conditions and history of Stephen Rozanski and Ronald Berube as individuals. When viewed most favorably to defendant, defendant's evidence only

showed an increased likelihood of low back injury, a greater possibility of such injury than if the conditions did not exist. *Such evidence, even if believed, falls far short of the reasonable probability test.* (Emphasis added) Based on the record before us, we cannot say that that finding was clearly erroneous. *See* M.R.Civ. P. 52(a).

### B. *Bona Fide Occupational Qualification (BFOQ)*

■ The Superior Court also rejected A–P–A's BFOQ defense, and properly so. It is unlawful to discriminate against the handicapped in hiring unless that discrimination is "based on a bona fide occupational qualification." 5 M.R.S.A. § 4572 (1979). The BFOQ defense "permits an employer to discriminate against an entire class of employees *without requiring any individual assessment* of each employee's abilities." *Maine Human Rights Commission v. Canadian Pacific Ltd.*, 458 A.2d at 1231–32 (emphasis added). To prevail on that defense, A–P–A was required to prove by a preponderance of the evidence both "(1) that the essence of the business operation requires the discriminatory practice and (2) that it had a factual basis to believe that all or substantially all persons in the excluded category would be unable to safely or efficiently perform the duties of the job involved." *Id.* at 1232. A–P–A failed to meet the evidentiary burden of establishing a BFOQ as an affirmative defense. The Superior Court specifically found,

> the better medical evidence is that persons of the age, physical condition and work history of plaintiffs run no greater risk of lower back injury than persons with completely negative lower back x-rays. There was no evidence which came close to establishing that all or substantially all persons with the conditions of either plaintiff would be unable to safely or effectively perform the duties of the truck driving job.

On this record we find no reason to disturb that finding of fact. *See* M.R.Civ. P. 52(a).

### C. *Alternative Justification for Berube's Termination*

■ Finally, the Superior Court properly rejected A–P–A's argument that absent any unlawful discrimination plaintiff Berube would have been terminated in any event because of his bad driving record. In *Maine Human Rights Commission v. City of Auburn*, 425 A.2d 990, 995–96 (Me. 1981), we held that once an employee proves that he was the victim of unlawful employment discrimination, the burden then shifts to the employer to prove by clear and convincing evidence that absent any unlawful discrimination the employee would not have been hired in any event. In the case at bar the Superior Court found that with the sole exception of the x-ray screening, Berube met all of A–P–A's criteria for permanent employment; that although Berube had 15 points against his driver's license, none of those points was assessed as a result of traffic infractions from the operation of a truck; that Berube was not in immediate danger of losing his license at the time of his termination; that A–P–A did not obtain the report on Berube's driving record until after the date it was to decide whether to make Berube a permanent employee; and that even if A–P–A had obtained that report earlier, it would not have resulted in his termination because of the overall positive impression Berube had made on A–P–A management. Based on those factual findings, the Superior Court determined that A–P–A had failed to adduce clear and convincing evidence that Berube would have been terminated even absent his x-ray results. On the record before us, we cannot say that finding was clearly erroneous. *See* M.R.Civ. P. 52(a).

### IV. *Relief*

■ The Superior Court ordered defendant to pay plaintiffs back wages and lost fringe benefits from the date of termination to the date "defendant offers to each respective plaintiff a position as originally applied for, or its substantial equiva-

lent." Immediate reinstatement was not ordered because "to hire plaintiffs [would] result[ ] in the immediate loss of jobs of other A–P–A employees." Those remedies were ordered pursuant to 5 M.R.S.A. § 4613(2)(B)(2) (Supp.1985), which provides:

> If the court finds that unlawful discrimination occurred, its judgment shall specify an appropriate remedy or remedies therefor. Such remedies may include, *but are not limited* to ... [a]n order to employ or reinstate a victim of unlawful employment discrimination, with or without back pay....

(Emphasis added) On appeal A–P–A urges that the Superior Court erred in three respects in the remedies it awarded Rozanski and Berube pursuant to that statutory provision.[1] The first is that the court did not take into account A–P–A's subjective good faith. The second is that the court abused its discretion in awarding Rozanski and Berube lost fringe benefits in addition to lost wages. The third is that the court erred in predicting Rozanski's and Berube's lost wages after the close of the record as of March 30, 1985. We find merit in the third argument only.

 The Superior Court found that A–P–A acted under the mistaken belief that it could screen applicants from permanent employment on the sole basis of lower back x-ray readings. A–P–A now argues that the relief awarded Rozanski and Berube, including full back pay and reinstatement, disregards the court's own finding that A–P–A, being unaware of the requirements of the Maine Human Rights Act, acted in good faith. Subjective good faith, particularly that arising from ignorance of the law, is not a defense to employment discrimination under the Maine Human Rights Act. *See Maine Human Rights Commission v. Canadian Pacific, Ltd.,* 458 A.2d at 1231. In fashioning remedies for a violation of the Maine Human Rights

Act, the Superior Court is permitted but not required to consider the employer's degree of culpability, that is, whether employer acted out of ignorance or in willful violation of the law. The Maine Human Rights Act, however, does not require the Superior Court to consider culpability in determining the extent to which an employee is entitled to relief. *See* 5 M.R.S.A. § 4613(2)(B)(2). Instead, the paramount objective of the remedy is to make whole the victim of unlawful employment discrimination. *See Maine Human Rights Commission v. City of Auburn,* 425 A.2d at 996–98. *Cf. Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (purpose of Title VII of Civil Rights Act of 1964 is to "make whole" the victims of unlawful employment discrimination). Choice of the remedy to accomplish that goal is vested in the sound discretion of the Superior Court. *See Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253, 1261 (Me. 1979). The court's discretion is not abused so long as the relief ordered is designed to make the employee whole and not to penalize the employer unless that penalty is authorized by statute. *See, e.g.,* 5 M.R.S.A. § 4613(2)(B)(7) (Supp.1985). The relief ordered by the Superior Court in the case at bar is plainly tailored to serve the statute's remedial objective of placing Rozanski and Berube in the financial positions they would have enjoyed had they not been the victims of unlawful employment discrimination. We can find no reversible error in the Superior Court's decision that in spite of the absence of any deliberate wrongdoing on the part of A–P–A, Rozanski and Berube are entitled to full back pay pending their reinstatement.

██ A–P–A also contends that the Superior Court abused its discretion in ordering the payment of the equivalent of lost

---

1. Defendant also asserts that it was denied its constitutional right to trial by jury on the back pay claim. In *Maine Human Rights Commission v. City of Auburn,* 408 A.2d 1253, 1261 (Me.1979), we disposed of that issue, ruling,

"The evaluation of the evidence is to be done by a judge, not a jury. An action arising under the Human Rights Act is equitable in nature, and any relief thereunder is granted only through the exercise of the sound discretion of a judge."

fringe benefits. The Superior Court found that, had Rozanski and Berube not been terminated, they and their dependents would have benefited from a generous medical plan, paid entirely by A–P–A, covering their medical, dental, and ophthalmological expenses. We can find no error in the Superior Court's decision that A–P–A must pay Rozanski and Berube for the medical, dental, and ophthalmological costs for themselves and their dependents that A–P–A's medical benefits plan would have borne if they had not been illegally discriminated against. *Cf. Berkman v. City of New York,* 705 F.2d 584, 595–96 (2d Cir. 1983) (relief under Title VII may include "payment of the value of past fringe benefits"). Loss of those benefits is plainly part of the injury suffered by plaintiffs as a result of A–P–A's unlawful discrimination against them.

We also find no error in the court's determination of the amount of Rozanski's and Berube's actual wage loss up through March 30, 1985, the date as of which the record evidence closed. It does appear, however, that the Superior Court, on the basis of the record before it, made a mistake in projecting the lost wages accruing from March 30, 1985, to August 3, 1985. That error came in estimating for that period the earnings that Rozanski and Berube could be expected to earn with reasonable diligence in other employment.[2] To compute allowable back pay, those outside earnings must be deducted from what they would have earned at A–P–A in that same period. *See Maine Human Rights Commission v. City of Auburn,* 425 A.2d at 998–99 (deduction of "earnings that plaintiffs could have earned with reasonable diligence comports with common law contract principle of mitigation of damages"). The Superior Court assumed that plaintiffs' weekly wage loss after March 30, 1985, would equal their average weekly loss during the 167–week period starting with their termination on January 12, 1982,

and running through the end of March 1985. The record evidence, however, strongly suggests that such an assumption overstates plaintiffs' actual wage loss in that four-month period of 1985. The record figures of their average weekly wage loss since January 1982 reflect periods of time when Rozanski and Berube were either unemployed or earning much less than they have earned more recently. For example, Rozanski apparently earned about $428 per week during the first quarter of 1985, but only an average of $273.50 for the whole 167–week period.

In any event, more than 15 months have now elapsed since the record closed as of March 30, 1985. In the interest of fairness to both sides, we find it advisable to remand the case to the Superior Court for it to determine the actual wage loss suffered by Rozanski and Berube from March 30, 1985, to the date of the new hearing. On remand the Superior Court should recompute plaintiffs' actual wage loss to the date of the new hearing and should modify paragraph 3 of its order of July 31, 1985, accordingly. Then, it should modify paragraph 4 of that order to state clearly that defendant also must pay to Rozanski and Berube their wage loss for the period subsequent to the new hearing and ending upon their rehiring. Those lost wages are to be computed as the difference between what plaintiffs would have earned at A–P–A in that period and what they can earn with reasonable diligence in other employment.

The entry is: Judgment affirmed, except as to paragraphs 3 and 4 thereof, which are vacated.

Remanded for further proceedings consistent with the opinion herein.

---

**2.** A–P–A has raised no argument on appeal that the actual earnings of Rozanski and Berube

represent less than they could have earned with reasonable diligence.