STATE OF MAINE                                          SUPERIOR COURT
PENOBSCOT, SS.                                          Docket No. CV-00-163

Vance Ginn,                          )
              Plaintiff              )
                                     )
                                     )
                                     )
        v.                           )        **ORDER**
                                     )
                                     )
Kelley Pontiac-Mazda, Inc.,          )
              Defendant              )

FILED AND ENTERED
SUPERIOR COURT

JAN 1 6 2002

PENOBSCOT COUNTY

Pending before the court is the plaintiff's motion for attachment and trustee process. At the January 11, 2002, hearing on the plaintiff's claims for equitable relief -- at which time the plaintiff filed the motion at bar --, the court indicated that it would presently entertain the motion only as it related to the issues previously resolved by the jury (namely, the awards of nonpecuniary compensatory damages and of punitive damages). The defendant was allowed some time to respond to those aspects of the motion. The defendant filed such a response that the court has considered.

The court is satisfied that attachment and trustee process are available as post-verdict but pre-judgment remedies to a party who prevails on a claim in the trial court. The defendant correctly notes that trustee process is probably not available as a post-judgment remedy. *See United Air Lines, Inc. v. Hewins Travel Consultants, Inc.*, 622 A.2d 1163, 1171 (Me. 1993); *Ricci v. Key Bankshares of Maine*, 662 F.Supp. 1132, 1143 (D. Me. 1987) (applying Maine law); *but see State v. Miller*, 645 A.2d 1140, 1141 (Me. 1994). Here, however, judgment has not been entered, and so

1

both forms of relief remain available.

The jury's verdict on the issues submitted to it establish a probability that the plaintiff will recover judgment of at least the amount of those awards, subject to the statutory limitation of $50,000 that the plaintiff suggests is applicable to the damages assessed by the jury.

The plaintiff also seeks an attachment to cover an award of attorney's fees. *See* 5 M.R.S.A. § 4614. He states that amount to be roughly $10,000. However, the plaintiff has not submitted any evidence or data that would allow the court to determine, to a probability, the amount of fees that may be awarded as part of the judgment. Thus, the attachment order cannot include this part of the plaintiff's claim for relief.

Finally, in the alternative, the defendant seeks an order that would limit any attachment or trustee process to specific property. *See* M.R.Civ.P. 4A(d)(1), 4B(d)(1). The defendant has failed to make a showing that would allow such a limited application of an attachment or trustee process order. *See Liberty v. Liberty,* 2001 ME 19, 769 A.2d 845.

The entry shall be:

For the foregoing reasons, attachment and trustee process against the defendant are ordered in the amount of $50,000. This order is without prejudice to the plaintiff's right to seek an increase in the amount of attachment and trustee process on the basis of his claims for backpay and frontpay, after those claims have been adjudicated by the court.

Dated: January 15, 2002

_____
JUSTICE, SUPERIOR COURT

2

STATE OF MAINE
PENOBSCOT, SS.

FILED AND ENTERED
SUPERIOR COURT

MAR 08 2002

PENOBSCOT COUNTY

SUPERIOR COURT
Docket No. CV-00-163

_H - PEN - 3/8/2002

Vance Ginn,
        Plaintiff

        v.

Kelley Pontiac-Mazda, Inc.,
        Defendant

)
)
)
)
)
)
)
)
)
)

**DECISION AND JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

APR 8 2002

At a jury trial held in this matter, the defendant was found to have engaged in unlawful employment discrimination against the plaintiff on March 12, 1999. On the basis of this actionable conduct, the jury awarded the plaintiff non-economic compensatory damages of $62,400 and punitive damages of $75,000. The parties have noted on the record that, when combined, these awards are subject a statutory limitation of $50,000. *See* 5 M.R.S.A. § 4613(2)(B)(8)(e)(i).

The parties agreed that the plaintiff's claims for backpay and frontpay, *see* 5 M.R.S.A. § 4613(2)(B)(2), would be decided by the court if (as it did) the jury found for the plaintiff on his liability claim. Accordingly, on January 11, 2002, a jury-waived hearing was held on those elements of damages that were not submitted to the jury. The evidence developed at the January 11 hearing was intended to supplement evidence presented to the jury, to the extent that the latter also has relevance to the reserved damages issues. Following the presentation of evidence on January 11, the parties submitted written argument, which

1

the court has considered.

At the time of the adverse employment action, the plaintiff received gross weekly income of $350. He also received the use of a company car. At the jury hearing, he testified that the value of that benefit was $150 per week, based on the number of miles he drove the car. The court accepts this assessment. The defendant argues here that the value of the use of the vehicle should not be included in determining the amount of the plaintiff's compensation in this analysis, because virtually all of those miles resulted from the plaintiff's commute to and from work. (He lives in Abbot, and the defendant's place of business is in Bangor.) The court is not persuaded by this contention. An award of backpay under section 4613(2)(B)(2) includes the value of fringe benefits. *Rozanski v. A-P-A Transport, Inc.*, 512 A.2d 335, 342-43 (Me. 1986); *LaPlante v. United Parcel Service, Inc.*, 810 F.Supp. 19, 22 (D.Me. 1993) (construing Maine Human Rights Act). The value of the plaintiff's use of the vehicle owned by the defendant is a fringe benefit. That the plaintiff used the vehicle to drive to work does not reduce its value. For example, if the plaintiff drove his own car to work, the court would not reduce an award of backpay by the cost of the gas he needed to buy in order to drive that distance. Therefore, the court calculates an award of backpay at the weekly rate of $500.

The adverse employment action occurred on March 12, 1999. Gross backpay through the end of 2001, prior to any offset, amounts to $73,000 ($500 per week for 146 weeks). At the January 11 hearing, the defendant presented evidence that the business' franchises were expected to be sold by February 1, 2002, and that the business' remaining operations would be

2

limited to the sale of used cars. With this transformation, the number of employees retained by the defendant would be substantially decreased, and the plaintiff's responsibilities would have been terminated. Thus, with the assumption that the defendant carried out its intentions, the court finds that the plaintiff is not entitled to an award of pecuniary damages for the period of time subsequent to February 1, 2002. Therefore, his compensable economic loss for 2002 is an additional five weeks, or $2,500, resulting in a total gross backpay claim of $75,500.

Two offsets must then be considered. First, after the adverse employment action, the plaintiff became more active in helping his wife with her crafts business. The record evidence established that after March 1999, the crafts business generated an increased amount of receipts. That evidence, presented in the form of portions of joint tax returns for 1998 through 2000 and an income statement for 2001, combines financial information for the craft business and the car detailing work that the plaintiff himself performed through self-employment. The plaintiff proposes that this increase may be seen as the result of the plaintiff's efforts and that this amount should be used to reduce his gross backpay claim. To the extent that this position relates to the craft business's net income, this may be an oversimplified analysis, but the defendant is clearly entitled to consideration of this income source attributable to the plaintiff's work, and this approach is the best one available on this record.[1] Evidence of the plaintiff's tax returns, which he filed jointly with his wife

---

[1] The court concludes that this approach is one that gives the benefit of the doubt to the defendant. There could be many reasons for the increase in income enjoyed by the plaintiff's wife, and those reasons could be unrelated to the plaintiff's increased availability.

and which therefore reflect the financial data associated with the crafts business and the plaintiff's car detailing work, reveals that this increase amounts to a total of nearly $18,000 through the end of 2001.

In 2001, the plaintiff's actual earnings slightly exceeded $7,000. This is an average of $135 per week. For the five weeks of 2002 at issue, this amounts to assumed earnings of $675. Therefore, the plaintiff's total earnings from March 12, 1999, to February 1, 2001, are $18,675. Because this represents the plaintiff's actual earnings during the period when the plaintiff is entitled to an award of backpay, that amount is used to reduce his award. *Maine Human Rights Commission v. Department of Corrections*, 474 A.2d 860, 869 (Me. 1984). Thus, based on the plaintiff's actual earnings, the backpay award must be reduced to $56,825.

Second, the defendant argues that with reasonable diligence, the plaintiff could have earned additional employment income during the pertinent period and that he therefore has failed to mitigate his damages. The defendant bears the burden "to prove facts to enable the court to determine the appropriate deduction." *Maine Human Rights Commission*, 474 A.2d at 869. The Law Court has established the nature of the defendant's proof in this context: the

> 'defendant's burden of proving a lack of diligence is not satisfied merely by a showing that there were further actions that plaintiff could have taken in pursuit of employment. Rather, the defendant must show that the court of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment. The range of reasonable conduct is broad and the injured plaintiff must be given the benefit of every doubt in assessing her conduct.'

*Id.* (Citation omitted.)

4

Here, after the adverse employment action, the plaintiff contacted several car dealerships located closer to his home than Bangor but was unable to obtain new employment. His efforts to find work as a contractor and carpenter were also unsuccessful. Within one month of his departure from the defendant's employment, he applied for and was accepted as a participant in the Maine Enterprise Option ("MEO") program, operated by the State of Maine Department of Labor. *See* plaintiff's exhibit A. From the letter of acceptance, the court infers that the MEO program allows recently unemployed workers to receive benefits to provide support when they begin a course of self-employment.[2] Receipt of a "self-employment assistance allowance" is predicated on a number of requirements that appear designed to promote self-employment business development and training. The allowance is in the same amount, and runs for the same duration as conventional unemployment benefits. In this case, the plaintiff satisfied the Department's requirements, maintained his eligibility for allowance payments and obtained all of the benefits that were available to him.

The defendant argues that the plaintiff's participation in the MEO program did not satisfy his duty to mitigate his damages. This argument requires consideration of the plaintiff's employment circumstances, first, during the time that he received MEO allowance payments and, next,

---

[2]The parties presented little evidence about the nature of the MEO program. The court's research did not reveal any statutory insight into MEO. (The only statutory allusion found by the court is a reference to the name of the program, located in the history to 26 M.R.S.A. § 2006.) Perhaps the MEO program is established by regulation, but the parties did not present evidence of any such regulations, which would be necessary because rules and regulations cannot be judicially noticed. *See* FIELD AND MURRAY, MAINE EVIDENCE § 201.1 (2000 ed.).

during the time after he had exhausted those benefits.

An unemployed worker ordinarily cannot receive conventional employment benefits for more than 26 weeks during a benefit year. 26 M.R.S.A. § 1191.[3] According to the letter accepting the plaintiff into the MEO program, this would be the duration of his allowance payments. The court finds that his participation in this self-employment program, as an alternative to employment by another person or entity, was not a course of conduct that "was so deficient as to constitute an unreasonable failure to seek employment." *Maine Human Rights Commission*, 474 A.2d at 869. To develop self-employment is a reasonable alternative to employment by others. By satisfying the program's requirements while he participated in it, he took steps directly designed to enhance the prospects of successful self-employment. The plaintiff had some job skills and a vocational interest that he wished to pursue. He did so as a supervised participant in a program that was tailored to his circumstances. While he remained a participant in the MEO program, he received financial assistance from the state.[4]

Income at the beginning of a self-employment venture may not be as reliable or even as great as employment income paid by others. To this degree, a liable employer might not be entitled to as full a deduction for a former employee's earnings (actual or imputed) as it would be if the

---

[3]In some circumstances, an unemployed worker may be eligible for extended benefits. 26 M.R.S.A. §§ 1195-96. The plaintiff does not argue that any of those circumstances are present here.

[4]The amount of any such benefits cannot be used to reduce the defendant's liability, *see Maine Human Rights Commission*, 474 A.2d at 870, and the defendant does not seek such a reduction here.

employer were required to enter the employ of another. However, in *Maine Human Rights Commission*, the Law Court established a deferential standard by which the former employee's conduct is gauged. Additionally, during the period of time when a plaintiff participates in the MEO program, even in those cases where the plaintiff's initial earnings are low relative to potential earnings available elsewhere, the defendant could be the beneficiary of those efforts if the plaintiff's self-employment succeeds in the end.

The court infers from the evidence that the plaintiff participated in the MEO program for the maximum period of eligibility in 1999, namely, 26 weeks. For that period of time, the defendant has not shown that the plaintiff failed to act with reasonable diligence to enhance his actual earnings.

However, consideration must also be given to the period of time after his participation in the MEO program apparently ended, in late 1999. For 1999, after the adverse employment action, the plaintiff's actual earnings were less than $4,000. In 2000 and 2001, his actual earnings were roughly $7,000 for each year. The plaintiff generated this income by detailing an occasional car and, in essence, running errands for his wife in connection with her crafts business. From this evidence, the court finds that by the time the plaintiff was no longer eligible to receive MEO assistance payments, it was no longer reasonable for him to limit his employment to the family businesses.

However, the defendant has failed to establish that other reasonable options and opportunities were available to the plaintiff at some time in or after later 1999. Earlier in that year, the plaintiff's efforts to find a job

were unsuccessful. The defendant presented evidence of job openings in April 1999 at a car dealership in Bangor. There is no evidence that the plaintiff could have secured employment there later in the year or sometime thereafter. The defendant must prove more than the plaintiff's failure to take "further actions . . . in pursuit of employment." *Maine Human Rights Commission*, 474 A.2d at 869. Here, for the period of time after late 1999, that is all the defendant has shown. The defendant has failed to prove, for example, that reasonable employment opportunities were available to the plaintiff.[5] Accordingly, the defendant has not satisfied its burden of establishing that the plaintiff has failed to mitigate his damages.

The entry shall be:

Pursuant to the jury verdict and the court order of this date, judgment is entered for the plaintiff. He is awarded total damages of $106,825 (consisting of non-pecuniary damages and punitive damages in the combined amount of $50,000 as awarded by the jury but limited by 5 M.R.S.A. § 4613(2)(B)(8)(e)(i), in addition to backpay of $56,825 as assessed by the court); attorney's fees; interest at the statutory rate; and his costs of court.

Dated: March 8, 2002

_____
Justice, Maine Superior Court

---

[5] The court cannot properly infer that job opportunities *must* have been available to the plaintiff somewhere. If this were a proper approach, then the type of analysis used by the Law Court in *Maine Human Rights Commission* would be superfluous. Any such inference would not be supported by the evidence, would be improper as a matter of law, and would be inadequate to allow the court "to determine the appropriate deduction." *Maine Human Rights Commission*, 474 A.2d at 869.

8

Date Filed 8/21/2000     PENOBSCOT     Docket No. CV-2000-163

County

Action CIVIL - CIVIL RIGHTS

Assigned to Justice Jeffrey L. Hjelm

VANCE GINN            KELLEY-PONTIAC-MAZDA, INC.

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| GILBERT & GREIF, P.A.<br>82 Columbia Street, PO Box 2339<br>Bangor, Maine 04402-2339<br>BY: Arthur J. Greif, Esq. | Preti, Flaherty, Beliveau, Pachios & Haley, LLC<br>45 Memorial Circle, PO Box 1058<br>Augusta, Maine 04332-1058<br>BY: Stephen E.F. Langsdorf, Esq. |

| Date of Entry | |
|---|---|
| 8/21/2000 | Complaint Filed. |
| 8/22/2000 | Case File Notice forwarded to Plaintiff's Attorney. |
| 9/14/2000 | Answer and Affirmative Defenses Filed by Defendant. |
| 9/18/2000 | Acceptance of Service by Stephen E.F. Langsdorf, Esq. on behalf of Defendant Filed. (S.D. 9/13/2000) |
| 9/19/00 | Scheduling Order (M.R.Civ.P. 16 (a)) filed. The entry will be: Scheduling Order filed. Discovery deadline is June 1, 2001. (Hjelm, J) Copy forwarded to all attorneys of record. |
| 9/28/00 | Plaintiff's Jury Trial Request filed. Jury Trial Fee of $300.00 **PAID**. |
| 10/4/2000 | Objection to Plaintiff's Jury Trial Request Filed. |
| 10/18/00 | Upon Defendant's Objection to Plaintiff's Jury Trial Request - Plaintiff is entitled to trial by jury. See 5 MRSA§4572 (1)(A), 4613 (2)(B)(8)(g) (Hjelm. J.) Copy forwarded to attorneys of record. |
| 6/1/01 | Estimate for Time Required for Trial and Request to Proceed Under Rule 16(b) filed by Plaintiff. (Trial estimate 2 days) |
| 10/1/01 | Pretrial Order (M.R.Civ.P. 16(b) filed. The entry will be: "Rule 16(b) Pretrial order entered." (Hjelm, J.) Copy forwarded to all attorneys of record. |
| 10/1/01 | Attorneys of record notified of Trial Management Conferences scheduled November 19, 2001 at 9:30 A.M. before Justice Jeffrey L. Hjelm for December trial term dates December 10-14; 17-21/2001. Copy of Jury/ Backup Jury Waived trial list mailed on this date. |