RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4725-14T2

IN THE MATTER OF T.L.,
CORRECTION OFFICER RECRUIT
(S9988M), DEPARTMENT OF
CORRECTIONS.
___________________________

 Submitted March 1, 2017 – Decided September 15, 2017

 Before Judges Fuentes and Simonelli.

 On appeal from the New Jersey Civil Service
 Commission, Docket No. 2014-1176.

 Chatarpaul Law Offices, P.C., attorneys for
 appellant T.L. (Jay J. Chatarpaul, on the
 brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent Civil Service
 Commission (Melissa H. Raksa, Assistant
 Attorney General, of counsel; Pamela N.
 Ullman, Deputy Attorney General, on the
 brief).

PER CURIAM

 Appellant T.L. seeks that this court reverse the decision of

the Civil Service Commission (Commission) that found her

psychologically unfit to perform the duties of a Corrections

Officer in the Department of Corrections and consequently removed
her name from the list of eligible candidates. Mindful of our

standard of review, we affirm.

 Appellant's psychological fitness to perform the duties of a

Corrections Officer was first brought before the Medical Review

Panel on August 24, 2014. The Panel issued its report on August

28, 2014. The parties thereafter filed their exceptions and cross-

exceptions. The report included the psychological evaluation

report by Dr. Matthew Guller on behalf of the appointing authority

completed on August 2, 2013, based on a clinical interview he

conducted on July 31, 2013. "The purpose of the examination was

to determine the presence, if any, of emotional or intellectual

characteristics that would detrimentally affect the subject's

performance in the role of corrections officer."

 Dr. Guller described appellant as a "twenty-six-year-old

single female." Appellant responded to the evaluation "on-time

and was well-groomed in a professional manner." Her demeanor was

"friendly and upbeat." She had been unemployed at the time for

seven months, but was taking four college courses. She had served

in the United States Marine Corps from August 2005 to December

2012. Appellant was deployed to Iraq for one tour of duty from

December 2006 to January 2008, and served another tour of duty in

Afghanistan from June 2010 to December 2010. She denied having

had any traumatic experiences while serving in the Marines.

 2 A-4725-14T2
However, she was a passenger in a Humvee that "flipped" three

times. Appellant received an Honorable Discharge from the Marines

at the rank of E-5 and specialized in Supply Clerk Maintenance.

She was never disciplined.

 In her life as a civilian, Dr. Guller noted that appellant

never had any problems with law enforcement. She confirmed that

she appeared in a police report when her roommate was murdered by

her fiancée while the victim was pregnant. Appellant was not a

suspect in the case. Dr. Guller nevertheless noted that appellant

"described this situation in a bizarrely nonchalant, almost joking

manner[.]" Appellant also told Dr. Guller that she was receiving

a disability pension from the military "but was quite vague" about

the reasons that rendered her eligible to receive this monetary

assistance. She believed it was connected to "her back, ankle and

knees." When Dr. Guller asked if the pension was related to Post-

Traumatic Stress Disorder (PTSD), appellant responded: "I don't

recall . . . I think they said I had a mild case of that."

 In response to Dr. Guller's request, appellant provided

documentation showing "she is collecting a 60% disability, with

10% assigned to each of the following: her back, right ankle, and

Tinnitus. There is an additional 30% disability assigned for

'Adjustment disorder with anxiety with dipsomania; non-specific.'"

According to Gullere, in the Career Occupational Preference System

 3 A-4725-14T2
(COPS) test, appellant "scored extremely high on a number of

categories that suggest problems, including paranoid orientation

(99th Percentile), depression (95th percentile), authoritarianism

(94th percentile), integrity/dishonesty (99th percentile), and

aggression (95th percentile)." Based on these findings and

impressions, Dr. Guller did not recommend appellant for

appointment as a corrections officer.

 Clinical forensic psychologist Dr. David Gomberg interviewed

appellant on October 5, 2013, and administered several

psychological examinations on February 6, 2014. She reported to

Dr. Gomberg the same experiences she discussed with Dr. Guller

involving the incident with the Humvee. Dr. Gomberg characterized

appellant as confident, hardworking, industrious, organized, and

responsible. He concluded that she was "eminently qualified" for

employment as a Corrections Officer. Both sides filed exceptions

to the psychologists' conclusions and findings.

 The Medical Review Panel "is composed of professionals in the

medical or psychological field." N.J.A.C. 4A:4-6.5(g). Here,

the Panel that reviewed appellant's appeal consisted of two

psychologists and one physician. The report the Medical Panel

submitted to the Commission "was concerned about the casual nature

of [appellant's] approach to both understanding of and responding

appropriately to her disability status." The Panel noted that

 4 A-4725-14T2
appellant's willingness to continue to collect benefits based on

having sustained service-related injuries, while at the same time

claiming to be fit to work in a correctional institution, "was not

consistent with a role in law enforcement."

 After reviewing the evaluations and reports of both Dr. Guller

and Dr. Gomberg, the Medical Review Panel concluded that "the

applicant is mentally unfit to perform effectively the duties of

the position sought, and therefore, the action of the hiring

authority should be upheld." The Commission was not persuaded by

appellant's exceptions and ultimately adopted the Medical Review

Panel's recommendations. Of particular concern to the Commission

was appellant's dipsomania, which it found was "not a good match

for working in a correctional environment." The Commission found

that appellant

 has failed to provide any evidence that she
 is now free from this disorder as she claims.
 Further, the Commission has concerns that if
 the appellant was free from dipsomania as she
 claims, that she continues to collect pension
 from the military for this condition. This,
 in and of itself, raises integrity issues for
 someone who aspires to a career in law
 enforcement and would constitute sufficient
 cause for her removal from consideration.

 Appellant now argues before this court that the Commission's

decision was arbitrary, capricious and discriminatory. Appellant

claims the Commission wrongly upheld the Department of

 5 A-4725-14T2
Correction's decision to discriminate against appellant based on

her disability. The Attorney General, on behalf of the Commission,

argues the Department of Corrections, as the appointing authority,

met its burden under N.J.A.C. 4A:4-6.3(b) of proving that appellant

was psychologically unfit to effectively perform the duties of the

position.

 The Commission has the authority to remove a candidate from

the eligible list if the evidence shows the person is

"psychologically unfit to perform effectively the duties of the

title." N.J.A.C. 4A:4-6.1(a)(3). "The use of psychological tests

to predict or evaluate employee job performance is a recognized

part of the American workplace." In re Vey, 124 N.J. 534, 540

(1991). The judicial capacity to review an administrative agency's

decision is limited to three inquiries:

 (1) whether the agency's action violates
 express or implied legislative policies; (2)
 whether the record contains substantial
 evidence to support the findings on which the
 agency based its action; and (3) whether, in
 applying the legislative policies to the
 facts, the agency clearly erred in reaching a
 conclusion that could not reasonably have been
 made upon a showing of the relevant factors.

 [R & R Mktg., L.L.C. v. Brown-Forman Corp.,
 158 N.J. 170, 175 (1999).]

 Here, the record shows the Commission carefully considered

the parties' presentations and the recommendations of the Medical

 6 A-4725-14T2
Review Panel and reached a final determination about appellant's

psychological fitness that is well-supported by the evidence. We

discern no legal basis to disturb it.

 Affirmed.

 7 A-4725-14T2