**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1016-18T2

IN THE MATTER OF C.E.,
POLICE OFFICER (S9999R),
ELIZABETH

_____

Argued telephonically March 18, 2020 –
Decided June 5, 2020

Before Judges Koblitz, Whipple, and Mawla.

On appeal from the New Jersey Civil Service
Commission, Docket No. 2017-677.

Stephen B. Hunter argued the cause for appellant C.E.
(Detzky, Hunter & DeFillippo, LLC, attorneys; Stephen
B. Hunter, of counsel and on the brief).

Robert J. Lenahan, Jr., Special Counsel, City of
Elizabeth Department of Law, argued the cause for
respondent City of Elizabeth.

Dominic L. Giova, Deputy Attorney General, argued
the cause for respondent New Jersey Civil Service
Commission (Gurbir S. Grewal, Attorney General,
attorney; Donna Arons, Assistant Attorney General, of
counsel; Dominic L. Giova, on the brief).

PER CURIAM

C.E.[1], appeals from a September 21, 2018 Final Administrative Action of the New Jersey Civil Service Commission (Commission) ordering his name be removed from the municipal police officer eligibility list, after he was deemed unfit to perform the duties of the position by the City of Elizabeth. We affirm.

C.E. passed the Civil Service Examination for the position of police officer and applied for employment with the City. C.E. worked as an emergency medical technician (EMT) for approximately fifteen years with various agencies including, the Elizabeth Fire Department Ambulance Service Bureau (EFDASB), Avenel First Aid Squad, Valley Hospital, and North Bergen EMS. Upon completion of his background check, he was offered a job and accepted it.

C.E.'s background investigation highlighted certain behaviors over the course of his employment. While working for EFDASB, C.E. was charged with and pled guilty to "yelling at and using profanities towards a co-worker and [making] inappropriate comments to a patient." C.E. was terminated from North Bergen EMS after being charged with incompetency, insubordination, neglect of duty, misuse of public property, including motor vehicles and other sufficient

---

[1] We utilize initials throughout. See N.J.A.C. 4A:4-6.5(b)(2) ("Information obtained . . . regarding the medical condition or history of an employee shall be collected and maintained on separate forms and in separate medical files and treated as a confidential medical record. . . .").

cause.  The record check also revealed C.E.'s driving record included six motor vehicle accidents and five license suspensions.

The City referred C.E. for a pre-employment psychological evaluation that was conducted on June 16, 2016, by Dr. Betty C. McLendon, Psy.D.  Dr. McLendon conducted a six-hour test using several metrics, including the Inwald Personality Inventory test.  In September 2016, Dr. McLendon issued a report finding C.E. was a person "who presented with a history and pattern of maladaptive functioning and adjustment problems."  Dr. McLendon also found that C.E. demonstrated "limited insights, poor judgment and a record of behaviors that reflected emotional instability across multiple domains of his life."  Dr. McLendon further opined that C.E.'s "inability to adhere to standards and to maintain proper professional decorum has been documented and further supports his unsuitability for a public service position."

After reviewing Dr. McLendon's report, the City notified C.E. that his name had been removed from its hiring authority's eligibility list.  C.E. appealed the City's decision to the Medical Review Panel (Panel) pursuant to N.J.A.C. 4A:4-6.5.  In support of his appeal, C.E. testified and submitted two independent psychological reports, one from Dr. John Aylward, Ed.D, and another from Dr. Nicole J. Rafanello, Ph.D, which both presented opinions C.E. was

psychologically fit for the position of a municipal police officer. C.E. also submitted various letters of recommendation primarily from his supervisors and colleagues.

On December 11, 2017, the Panel, after considering C.E.'s submitted materials, his appearance before the panel, and Dr. McLendon's initial evaluation, recommended the City uphold his removal from the eligibility list. The Panel was particularly concerned with C.E.'s reported problems at work as well as his driving record. The Panel noted:

> Despite the fact that he was injured just prior to his use of profanity, his judgment in that incident was poor. Though he stated that he did not direct any of the profanity towards the patient who was being transported, the official report from the incident that noted [C.E.] made inappropriate comments to the patient. [C.E.] pled guilty to the charge against him in that incident. . . . [H]e used an ambulance to push a disabled motor vehicle off a highway and allegedly failed to respond in a timely manner to a dispatch on a "priority call". . . . [C.E.] has had his driver's license suspended five times. That pattern of not following rules is not consistent with the behavior expected of a police officer. The number of incidents, some of which are in the recent past, . . . led the panel to find [C.E.] is not suited for work as a police officer.

The Panel considered the opinions of the evaluators, concluded Dr. McLendon's recommendation was sufficiently supported by the record, found

C.E. was mentally unfit to fulfill the duties of the position, and recommended the hiring authority keep his name off the eligibility list.

C.E. filed exceptions to the Panel's recommendation, and on September 21, 2018, the Commission issued an order upholding the Panel's decision. The Commission noted:

> While perhaps lacking any specific mental pathology, the Commission finds that the incidents such as yelling at a co-worker, directing profanity at a patient he was transporting, and failing to respond to a dispatch . . . are clearly reflective of an individual of questionable judgment and impulse control . . . .

The Commission added C.E.'s psychological traits and behavioral history, identified by the Panel, "clearly adversely relate to effective performance as a Police Officer" and ordered that his name be removed from the eligibility list. This appeal followed.

On appeal, C.E. argues the Commission's decision to remove his name from the eligibility list was arbitrary, capricious, and unreasonable because: 1) the Commission failed to refer to C.E.'s exemplary career as an EMT; 2) the Commission ignored the findings of the City's Background Investigation Unit who concluded that C.E. was a qualified candidate for the position; and 3) the Commission did not comply with the required legal standards in the State's psychological examination cases.

Our review of the Commission's decisions is limited.  See In re Stallworth, 208 N.J. 182, 194 (2011).  We accord a strong presumption of reasonableness to agency determinations.  In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001). We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result."  Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)).  "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'"  Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

"In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'"  Id. at 194 (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).  While an agency's interpretation of statutes and regulations within its enforcing responsibility are ordinarily entitled to our deference, E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010), "we are not bound by the agency's legal opinions," which we review de novo, A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (citation omitted).

A-1016-18T2

We reject C.E.'s arguments. C.E.'s reliance on In re Vey, 124 N.J. 534 (1991) (Vey I) and In re Vey, 135 N.J. 306 (1994) (Vey II) for the proposition that the Commission failed to comply with the required legal standards is misplaced. In Vey I, a seasonal police officer was removed from a township's eligibility list for a position as a full-time officer after her psychological evaluation indicated she was "more likely than the average person to become emotional or frustrated; impulsive and suspicious; and assertive and bold, with the suggestion of likely conflict between herself and supervisory personnel." 124 N.J. at 536-38. There the evaluator concluded: "[W]hile [the candidate] has many strengths, her potential for functioning well in the long term . . . as a police officer are below average." Id. at 537.

The Court remanded the matter to the agency so that it could relate its findings in the case to the statutory qualifications of the position. Id. at 543-44. The Court noted that while the evaluators found the candidate to have below-average potential because, in part, they believed her "boldness" and "suspiciousness" could pose problems between the candidate and her supervisors, it was not readily apparent how being "bold" or "suspicious" contributes to a candidate's unfitness to be a police officer. Id. at 543. The Court held: "If a trait is to be deemed disqualifying to the extent that it

demonstrates psychological unfitness, there must be evidence in the record of both the trait itself and the trait's correlation with the standard of psychological unfitness." Id. at 544.

In Vey II, 135 N.J. at 307, the Court determined the agency complied with terms of the remand and noted the candidate's negative test results were consistent with "the observed negative trend in [her] behavior and work performance." Id. at 308 (citation omitted). The Court recognized that society relies on police officers to carry out responsibilities that are "simultaneously weighty, sensitive, and fraught with dangerous consequences to themselves, other police officers, and the public." Ibid. The Court found the agency's decision was not arbitrary, capricious, or unreasonable in finding an applicant unfit for the position when, that applicant is "impulsive," "manipulative," "easily frustrated," "suspicious," and "assertive and bold with advisory personnel. . . ." Id. at 308-09.

Based on our review we conclude, the Commission complied with the mandates of Vey I and Vey II as its final decision identifies C.E.'s disqualifying traits, there is sufficient credible evidence in the record of the traits' existence, and there is a correlation with the traits and the standard of psychological unfitness. Like in Vey II, where the Court affirmed the agency's determination

that an applicant was unfit because both her work performance and psychological test results suggested she would not be an effective officer, C.E.'s behavioral record and psychological evaluation can be considered to lead to the same conclusion.

We also reject C.E.'s contention the Commission ignored the positive aspects of his profile, such as his career as an EMT and the independent psychological examinations of Dr. Rafanello and Dr. Aylward. The Panel's recommendation, which the Commission adopted, clearly evaluated each of the psychological examinations and nonetheless found, on balance, the negative traits rendered C.E. mentally unfit for the position. In addition, the Commission, in its final decision, stated it was unpersuaded by C.E.'s exception, that his EMT experience along with his letters of recommendation made him suitable to be a police officer.

While we recognize C.E.'s longstanding career as an EMT, we do not substitute our own opinion for the agency's, even if we would have reached a different result, when there is sufficient credible evidence to support the agency's decision. Based on our review of the record and well-established legal principles, we conclude the Commission's decision was not arbitrary,

A-1016-18T2

unreasonable, or capricious and was supported by sufficient credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1016-18T2