**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5248-18

IN THE MATTER OF
REALLOCATION OF JUDICIARY
CLERK 1, JUDICIARY CLERK 2,
JUDICIARY ACCOUNT CLERK 1,
COURT SERVICES REPRESENTATIVES,
AND JUDICIARY CLERK DRIVER
FROM THE COMPETITIVE TO
THE NON-COMPETITIVE DIVISION
OF THE CAREER SERVICE.

_____

Argued September 27, 2021 – Decided January 11, 2022

Before Judges Sumners, Vernoia and Firko.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-1508.

Edwin F. Chociey, Jr. argued the cause for appellant Administrative Office of the Courts (Riker, Danzig, Scherer, Hyland & Perretti, LLP, attorneys; Edwin F. Chociey, Jr., of counsel and on the briefs; Siobhan A. Nolan, on the briefs).

David Beckett argued the cause for respondent Judicial Council of Affiliated Unions (Beckett & Paris, LLC, attorneys; David Beckett, of counsel and on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission, (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu brief.)

PER CURIAM

The June 19, 2019 final agency decision of the Civil Service Commission (Commission) allowed the Judiciary, via the Administrative Office of the Courts (AOC or "agency"), a one-year interim reallocation of several entry-level support staff titles from the competitive to the noncompetitive division of the career service—exempting the titles from competitive examination hiring procedures—but denied the request for permanent reallocation of the titles. The AOC appeals, contending the decision was arbitrary, capricious, or unreasonable, arguing the Commission ignored substantial evidence, as well as its own prior decisions allowing for reallocation of entry-level job titles. Based upon the record on appeal, we remand so the Commission can explain why its June 19 decision differed from its decisions before and after that ruling. The Commission shall issue its remand decision within sixty days. We do not retain jurisdiction.

I

We briefly summarize the facts that bring this dispute before us. On November 17, 2016, the AOC, pursuant to N.J.A.C. 4A:3-1.2(c)(1) and (2),

submitted a letter to the Commission's Division of Agency Services (Agency Services) requesting the reallocation of several job titles from the Commission's competitive division to the non-competitive division. The request included the Judiciary "Support Staff Band Specification," a Commission-promulgated document grouping similar titles ("job band" or "title series"),[1] and a description of their duties and qualifications ("specifications"). The document covers the "Clerical, Administrative and Courtroom Support Track" of the support staff band, consisting of four levels: basic non-keyboarding titles, including Judiciary Clerk 1 and Court Services Representative; basic keyboarding titles, including Judiciary Clerk 2 and Judiciary Account Clerk 1; "Journey" titles; and "Mastery/Paraprofessional" titles. The designated support staff band includes "the base and bilingual titles."

---

[1] A "job band" is "a grouping of titles or title series into a single broad band consisting of title levels with similar duties, responsibilities, and qualifications." Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 551 (2018). The term "job band" was made defunct by the Court's decision in Communication Workers of America, AFL-CIO, which invalidated the program for which the term was adopted, and by the Commission's subsequent deletion of the term from most Civil Service regulations. 51 N.J.R. 191(b) (Feb. 19, 2019). The closest currently in-use term is "title series," meaning "titles involving the same kind of work and ranked according to level of difficulty and responsibility[,]" N.J.A.C. 4A:1-1.3, for which "[a] single specification may be used," N.J.A.C. 4A:3-3.2(c).

The titles included were "Judiciary Clerk 1, Court Services Representative, Judiciary Clerk Driver, Judiciary Clerk 2 and Judiciary Account Clerk 1, including the base and bilingual titles."  Duties of level 1 titles include, among other things:

- sorting, searching, and filing documents;
- answering routines questions;
- computing simple numerical data;
- operating photocopy machines and video or audio recording equipment;
- storing, inventorying, and distributing materials, parts, or supplies;
- recording applications, transactions, and requests; and
- performing physical tasks as necessary to reach or move job-related materials.[2]

There are no minimal education or experience requirements for level 1 titles. The job specifications require "competencies," such as:  listen well, adequately communicate ideas and information in writing using correct grammar, perform basic arithmetic, understand written material, and manage and organize information.

Duties of level 2 titles include, among other things:

- operating computers;

_____

[2]  "Any one position may not include all of the tasks listed, nor do [these] examples cover all" possible duties.

A-5248-18

- providing information to the public;
- requesting needed information from the appropriate parties;
- recording information into record-keeping or accounting systems;
- typing narrative statements, reports, correspondences, memoranda, warrants, contracts, or other legal documents;
- typing statistical or technical documents;
- calculating attorneys' fees or court costs;
- scheduling and participating in team meetings;
- composing routine correspondence; recording complaints;
- informing judges on the status of case-related matters; and
- communicating with counsel.

There are no minimal education or experience requirements for level 2 titles. The job specifications require "competencies," such as: type twenty-five words per minute; "identif[y] or solve[] problems in machines, computers, or other technologies as they are related to performing tasks"; interact well and tactfully with "different people from varied backgrounds and different situations[,]" including team participation; "solve[] practical problems by choosing appropriately from a variety of mathematical techniques such as formulas and percentages." Level 2 also requires knowledge of how "social, political, organizational, and technological systems work and" the ability to

"operate[] effectively within them."  Additionally, positions involving the operation of a vehicle require a valid driver's license.

The AOC asserted that competitive testing for the titles was not practicable due to their minimal requirements.  It further claimed the "[c]ertification procedures based on ranked eligible lists[3] have not or are not likely to meet" the Judiciary's hiring needs, because:

> [D]ue to the length of certifications, in some counties the lists become stale while in other counties[] the lists exhaust more quickly, and often bilingual lists exhaust due to the number of candidates who apply.  When lists become exhausted, the Judiciary is required to request another announcement through the Commission, which has required the Judiciary to go without staff for long periods of time, or to hire provisionally.  Many of the appointing authorities within the Judiciary are reluctant to hire provisionally due to the potential issues with provisionally appointed candidates not being reachable through the exam process.  Resources are needlessly wasted when provisionals are appointed and ultimately must be removed because they have not had the

---

[3]  "'Eligible list' means a roster compiled or approved by the [Commission] of persons who are qualified for employment or reemployment[,]" while "'[c]ertification' means a list of names presented to an appointing authority for regular appointment."  N.J.A.C. 4A:1-1.3.  Generally, eligible persons are ranked "in order of their scores" from competitive testing.  N.J.A.C. 4A:4-3.2(a)(2).  "When a vacancy is to be filled in the competitive division of the career service from an eligible list, the appointing authority shall request [from the Commission] a certification of names for regular appointment."  N.J.A.C. 4A:4-4.1(a).  A certification "contain[s] the names and addresses of the eligibles with the highest rankings on the appropriate [eligible] list."  N.J.A.C. 4A:4-4.2(a).

opportunity to compete in a testing situation or they do not pass or are not reachable on the resulting list. A non-competitive hiring status will allow a more flexible process for recruitment and selection than the traditional civil service testing process provides.

As an alternative, the agency proposed that the Judiciary appointing authorities would post vacancy notices as needed, human resources would work with hiring managers and/or interview panels to develop hiring criteria, and "[c]andidates would go through a structured interview process that [would] allow appointing authorities to target candidates with the competencies needed" and candidates would "be required to successfully pass a keyboarding assessment." Additionally, the vacancy notices would be posted with language informing applicants that "[s]hould another position become available within the next five months . . . the applicant pool from this posting may be used to fill additional positions." The AOC reasoned this process would "provide the appointing authorities the flexibility to utilize applicant pools for a short duration to ensure there is a sufficient applicant pool" or post a new notice of vacancy "in the event that a pool is insufficient."

The Judiciary Council of Affiliated Unions (JCAU) opposed the application. It argued, in part, that the AOC's request was unsupported by data or evidence and failed to address the titles with specificity.

To support its petition, the AOC subsequently submitted a chart of survey results, which did not indicate when it was conducted, listing 128 vacancies by county for the base and bilingual Judiciary Clerk 2 titles.[4] The AOC also asserted "the length of time to hire through the certification process creates recruitment problems." It claimed the time for requesting an announcement of open competitive exams to promulgating new eligible lists took an average six-and-half-months, which "is much too long if an appointing authority has depleted or is close to depleting a list for a particular title."

Additionally, the AOC indicated that it had requested such announcements with regard to the base and bilingual Judiciary Clerk 2 and Judiciary Account Clerk 1 titles most years between 2012 and 2017. The AOC claimed the three-year duration of eligible lists was "too long . . . [in] that as the lists become older, more applicants do not respond to the position notification or advise the Judiciary that they are not interested in the position[,]" explaining that the "lack of response by applicants or applicants advising that they are no longer interested in the position from an older list may become problematic even

---

[4] A chart note states "that many vicinages elect to fill their vacancies using the bilingual list, even if their vacancies are not specifically designated as bilingual vacancies."

for lists that appear to have sufficient numbers of eligible, for example [forty] or [fifty] names, especially if there are multiple openings to fill."

The AOC also submitted a summary of a survey it conducted of all appointing authorities, by county, to determine the status of the current job title lists. The summary evidenced the paucity of eligible applicants from 2016 and 2017 for some counties but did not include any information on the base or bilingual Judiciary Clerk 1, Court Services Representative, or Judiciary Clerk Driver titles. The AOC argued the Commission had previously reallocated similar titles "based on their not having any minimum education and/or experience requirements or based on their only requiring a valid license."

On June 19, 2019, the Commission issued its final agency decision reallocating the titles, but only on an interim basis. In making its decision, the Commission rejected the recommendation of Agency Services that reallocation be granted. Agency Services supported the AOC's reallocation request because: (1) it was for entry-level titles "requiring skills best assessed by direct observation during the working test period[,]"[5] similar to executive branch titles

_____

[5] "'Working test period' means a part of the examination process after regular appointment, during which time the work performance and conduct of the employee is evaluated to determine if permanent status is merited." N.J.A.C. 4A:1-1.3.

that have been reallocated to the noncompetitive division; and (2) the "ranked eligible lists have not or are not likely to meet the needs of the appointing authority due to such factors as salary, geographic locations, recruitment problems, and working conditions." Agency Services "determined that despite almost annual open competitive announcements for some of the subject titles, the Judiciary continued to exhaust these lists, particularly in certain [v]icinages."[6]

The Commission determined there was "not a sufficient basis on which to reallocate the proposed titles to the noncompetitive division on a permanent basis at this time." It explained:

> Although the duties of the titles are basic and elementary, this agency has been able to consistently test for the possession of these basic skills in competitive situations. Further, while the ranked eligible lists may have, on some occasions, been unable to meet the needs of the appointing authority due to such factors as salary, geographic locations, recruitment problems, and working conditions, the Commission is reluctant at this time to permanently reallocate these titles to the noncompetitive division without first attempting to administratively address these issues through other means to ensure that the State constitutional mandate to competitively test to fill

---

[6] Notably, the copy of the Agency Services memorandum in the record appears to be incomplete. It is only a single page, and only discusses the first basis for reallocation.

positions in the public services has been exhausted. In this regard, the Commission notes that it is anticipated that an open competitive examination for Judiciary Clerk 2 is currently being processed and, after the examination, an eligible list is expected to be promulgated by September 2019.

However, in the interim, in order to meet the Judiciary's current critical staffing needs, certification procedures based on the existing ranked eligible list are not likely to meet the needs of the appointing authority. Under these circumstances, interim noncompetitive status for the subject titles is appropriate in this matter.

The Commission did not affirmatively find that competitive examination would be practicable after the interim reallocation ended. Rather, it found that there was "not a sufficient basis" in the record for permanent reallocation, finding "the ranked eligible lists may have, on some occasions, been unable to meet" the Judiciary's needs, resulting in "current" staffing issues. The only support that determination requires is a lack of evidence that permanent reallocation is necessary. Thus, the Commission did not need substantial evidence that permanent reallocation was unnecessary to justify its findings.

II

Before us, the AOC contends the Commission's decision to only grant reallocation on an interim basis was arbitrary and unsupported by substantial evidence. It argues the record established: (1) that certification procedures are

inadequate to meet the Judiciary's needs; and (2) that competitive testing for these positions is not practicable because they have minimal requirements.

Appellate review of an administrative agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). A "strong presumption of reasonableness attaches" to the Commission's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). Thus, we generally defer to final agency actions, only "reversing those actions if they are 'arbitrary, capricious or unreasonable or [if the action] is not supported by substantial credible evidence in the record as a whole.'" N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

We must defer even if we would have reached a different result. In re Carter, 191 N.J. 474, 483 (2007) (citing Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). It is not our role to second-guess or substitute our judgment for that of the agency and, therefore, we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). Despite that general deference to the agency's

interpretations, this court is not bound by them. In re N.J.A.C. 7:1B-1.1 et seq., 431 N.J. Super 100, 114 (App. Div. 2013); N.J. Chapter of Nat'l Ass'n of Indus. and Office Parks v. N.J. Dep't of Envt'l Prot., 241 N.J. Super. 145, 165 (App. Div. 1990) ("While we must defer to the agency's expertise, we need not surrender to it.").

Our Supreme Court has recognized:

> Although administrative agencies are entitled to discretion in making decisions, that discretion is not unbounded and must be exercised in a manner that will facilitate judicial review. Administrative agencies must "articulate the standards and principles that govern their discretionary decisions in as much detail as possible." Van Holten Group v. Elizabethtown Water Co., 121 N.J. 48, 67 (1990). When the absence of particular findings hinders or detracts from effective appellate review, the court may remand the matter to the agency for a clearer statement of findings and later reconsideration. Application of Howard Sav. Inst., 32 N.J. 29, 53 (1960).
>
> [In re Vey, 124 N.J. 534, 543-44 (1991).]

"Unexplained inconsistency is . . . a reason for holding an [agency's] interpretation to be an arbitrary and capricious change from agency practice . . . ." Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981 (2005). Thus, "when an agency changes its course, it must provide a 'reasoned analysis.'" Glukowsky v. Equity One, Inc., 180 N.J. 49, 66 (2004)

(quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 57 (1983)).

The Commission is guided by Article VII, Section 1, Paragraph 2 of the New Jersey Constitution, which provides:

> Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; except that preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war may be provided by law.

Nevertheless, the Constitution "does not require that merit and fitness be determined by competitive examination in every case, but only 'as far as practicable.'" Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 232 (1985) (quoting N.J. Const. art. VII, § 1, ¶ 2).

Our Constitution "recognize[s] that although competitive examination would be the general rule . . . , there would be situations where [it] would not be practicable." Falcey v. Civ. Serv. Comm'n, 16 N.J. 117, 122-23 (1954). Thus, "any waiver of traditional competitive examinations must, as a constitutional matter, be based on their impracticality[,]" and on a title-by-title basis. In re Reallocation of Prob. Officer, 441 N.J. Super. 434, 445 (App. Div. 2015). The

constitutional competitive-examination mandate governs the outcome "over and above [any] statutory and regulatory requirements." Id. at 450. Thus here, on a title-by-title basis, "consideration must be given to whether the AOC has demonstrated that it is impracticable for it to continue filling" these positions "through open, competitive examinations." Ibid.

The Commission is also guided by statute and regulation. Passed in 1986, the Civil Service Act Title established Title 11A of our state statutes, id. at 444, and "governs civil service employment in New Jersey, which includes all positions within state government and those within the political subdivisions that choose to adopt it and be governed by its terms," Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. at 522. It grants the Commission the authority to:

> a. Establish, administer, amend and continuously review a State classification plan governing all positions in State service and similar plans for political subdivisions;
>
> b. Establish, consolidate and abolish titles;
>
> c. Ensure the grouping in a single title of positions with similar qualifications, authority and responsibility;
>
> d. Assign and reassign titles to appropriate positions; and
>
> e. Provide a specification for each title.

[N.J.S.A. 11A:3-1.]

The Commission is thus authorized to "[a]dopt and enforce rules to carry out [the act] and to effectively implement a comprehensive personnel management system." N.J.S.A. 11A:2-6(d).

Under N.J.A.C. 4A:3-1.2(c), "[a] job title may be placed in the noncompetitive division on an ongoing or interim basis" when the Commission determines "one or more" of three criteria are met. A finding that any or all of these criteria are met allows either "ongoing or interim" reallocation, and, as indicated by the use of the permissive phrase "may be placed . . . on an ongoing or interim basis[,]" the regulation leaves this determination to the Commission's discretion. Ibid. See also Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325 (2000) ("Under the 'plain meaning' rule of statutory construction, the word 'may' ordinarily is permissive and the word 'shall' generally is mandatory.").

Examining the three criteria permitting reallocation, it appears that each might be read as stating different reasons why competitive examination is impracticable. N.J.A.C. 4A:3-1.2(c)(2) and (3) both recognize that the competitive examination and certification process is not practicable when it is insufficient to meet an appointing authority's hiring needs. Subsection (c)(3) applies where that insufficiency is due to "a need for immediate appointments

16

arising from a new legislative program or major agency reorganization[,]" which would justify "limited, interim" reallocation. In re Reallocation of Prob. Officer, 441 N.J. at 447, 449. Subsection (c)(2) applies where that insufficiency is due to "such factors as salary, geographic location, recruitment problems, and working conditions[,]" which might justify "interim" reallocation to fill vacancies where the certification procedures "have not" met the appointing authority's needs, and "ongoing" reallocation where they "are not likely to meet" those needs moving forward.

The criteria in subsection (c)(1) is less self-explanatory: "Competitive testing is not practicable due to the nature of the knowledge, skills, and abilities associated with the job . . . ." Considering the Legislature's intention in creating the noncompetitive division to provide for noncompetitive appointment to "lower-level jobs" that "cannot properly be tested for," N.J.S.A. 11A:3-2.1(d), this criterion was likely meant to cover such titles. But the question remains, what is it about any particular "lower-level" title that justifies it "cannot properly be tested for."

A few weeks prior to argument on this appeal, the Commission reallocated the payroll clerk title to the non-competitive division on a permanent basis. In Re Reallocation of Payroll Clerk, No. 2022-312, 2021 N.J. CSC LEXIS 375

(Sept. 7, 2021).[7] The Commission explained that "[t]he subject title is an entry-level position in which incumbents would receive on-the-job training while performing activities related to routine clerical work including the review, verification, and preparation of payroll or personnel records, keeping time and work records and performing related duties." Ibid. It also referenced, but did not detail, "urgent staffing needs" in the Department of Human Services, which submitted the reallocation request. Ibid.

Akin to the final decision here, Agency Services recommended reallocation on an ongoing basis, reasoning that "competitive testing is not

---

[7] On September 29, 2021, the AOC filed a Rule 2:6-11(d) motion seeking reconsideration of our clerk's office September 24, 2021 decision rejecting its submission of In Re Reallocation of Payroll Clerk as an additional case citation under Rule 1:36-3. We denied the motion because the decision was not a court opinion and, thus, did not qualify as an unpublished opinion under Rule 1:36-3. See Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:36 (2022) ("Administrative law opinions so published are not subject to the non-citation ban of this rule because they are not court opinions.").

We also rejected the AOC's alternative argument that we accept its citation to In Re Reallocation of Payroll Clerk pursuant to Rule 2:5-5(a). The argument was not presented to the clerk's office but was set forth in its motion. Rule 2:5-5(a) is a mechanism for "an alternative method for settling the record when the issue is whether the transcript of sound or video recorded proceedings accurately represents what was said." Pressler & Verniero, cmt. 1 on R. 2:5-5(a). Thus, Rule 2:5-5(a) is inapplicable here.

Although we denied the motion, we reserved the right to consider any administrative decision cited or not cited by the parties, or issued before or after oral argument, that we determine is relevant to this appeal.

practicable for the subject title as it has no education and experience requirements, and the job specifications for the related titles have been updated." Ibid. Specifically, "the experience requirement for Supervising Payroll Clerk has been updated and the supervisory experience requirement has been removed as none of the lower level titles, including Payroll Clerk, provide the opportunity to gain the supervisory experience for advancement to that title." Id. at *1-2. The reallocation request was unopposed. Id. at *2.

The Commission ruled:

> Based upon the foregoing, ample reasons exist for the reallocation of the proposed title to the non-competitive division of the career service. This is an entry-level title that does not have any experience requirements. Consequently, there is no skill set to be tested. Incumbents will gain the required skill set during on-the-job training. Therefore, competitive testing and certification procedures are not necessary.
>
> [Id. at *2-3.]

From our reading, In re Reallocation of Payroll Clerk is consistent with two relevant prior Commission decisions, which suggest permanent reallocation of the subject titles here should have been granted. In In re Reallocation of Security Guard & Security Guard (Bilingual in Spanish & English) from the Competitive to the Non-Competitive Division of the Career Service, CSC Docket No. 2015-1402 (Dec. 5, 2014), the Commission's reasoning for

19

permanently reallocating the subject titles was that because they had "no education, experience or license requirement[, . . . ] competitive testing [was] impracticable." In In re Reallocation of Local Government Titles from the Competitive to the Non-Competitive Division of the Career Service, the Commission explained that it was permanently reallocating the subject titles because "[t]here [were] no specific experience requirements for the titles at issue and the only requirement [was] possession of education and/or certification. Therefore, competitive testing [was] impracticable for these titles." No. 2015-251, 2014 N.J. CSC LEXIS 572, at *4 (Aug. 4, 2014),

All three decisions are inconsistent with the Commission's decision in this case. As in In re Reallocation of Payroll Clerk: (1) the titles at issue here do not have any education or experience requirements; (2) Agency Services recommended reallocation; and (3) the appointing authority was experiencing "critical staffing needs." Seemingly, the only distinction between this case and In re Reallocation of Payroll Clerk is that here the reallocation request was opposed, while there it was not. Opposition to a reallocation application is not a determinative factor, especially considering the state constitutional requirement of competitive testing where "practicable," N.J. Const. art. VII, § 1, ¶ 2, and the legislative policy of exempting titles from competitive testing

20

where it is in fact impracticable, N.J.S.A. 11A:3-2.1(d). Significantly, the Commission's decisions do not acknowledge or offer any explanation for the apparent inconsistency between its reallocation decisions.[8]

We do not conclude that In re Reallocation of Payroll Clerk by itself provides a basis for reversal and requires an order providing for permanent reallocation of the subject titles in this appeal. The lack of education or experience requirements, as argued by the AOC, does not necessarily demonstrate that competitive testing is impracticable because "[e]valuation of education, training or experience" is only one of several types of exams; others include written tests, oral tests, physical performance tests, and "other appropriate measures of knowledge, skills, and abilities." N.J.A.C. 4A:4-2.2. On the other hand, competitive testing for lower-level positions without education or experience requirements may be practicable. The noncompetitive division was established "to provide for positions which cannot properly be tested for, such as lower-level jobs which do not require significant education

---

[8] In its reply to the AOC's motion for reconsideration, the Commission merely asserts that In re Reallocation of Payroll Clerk, the application was decided "two years after the decision on appeal" and does not pertain to the same facts or involve the same parties.

or experience, to be filled without the need of competitive examination." N.J.S.A. 11A:3-2.1(d).

Because of inconsistencies between the decision on appeal and the other noted Commission decisions regarding permanent reallocation of lower-level job titles to the non-competitive division, a remand is necessary. Within sixty days, the Commission shall issue a final agency decision explaining why the factors and principles it applied in its other decisions allowing for reallocation did not apply to the present situation. Of course, the Commission has the discretion to reach a different conclusion on remand.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5248-18