**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3793-19

IN THE MATTER OF F.S.,
POLICE OFFICER (S9999U),
CITY OF JERSEY CITY.

_____

Submitted October 25, 2021 – Decided November 8, 2021

Before Judges Vernoia and Firko.

On appeal from the New Jersey Civil Service Commission, Docket No. 2019-1899.

The Law Offices of Fusco & Macaluso, PC, attorneys for appellant F.S. (Giovanna Giampa, on the brief).

Peter J. Baker, Corporation Counsel, attorney for respondent City of Jersey City (James B. Johnston, Assistant Corporation Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Eric A. Reid, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

F.S. appeals from a Civil Service Commission final agency decision affirming the City of Jersey City's (City) removal of his name from the eligible

list for the position of police officer based on a psychological disqualification. F.S. claims the Commission's decision is arbitrary, capricious, and unreasonable, and is not supported by the evidence. Unpersuaded, we affirm.

The pertinent facts are not disputed. In December 2018, F.S. signed a conditional offer of employment with the City. In part, the offer of employment for the position of police officer was conditioned on F.S.'s successful completion of a psychological examination.[1]

F.S.'s psychological examination was completed at The Institute of Forensic Psychology by a New Jersey licensed psychologist, Dr. Guillermo Gallegos. In his December 21, 2018 report, Dr. Gallegos explained his examination consisted of a clinical interview of F.S. and the administration of seven psychological tests, including the Wonderlic Personnel Test. That test assesses verbal, mathematical, and conceptual skills. F.S. earned a score of eight on the test. Dr. Gallegos explained the score placed F.S. in the fourth "percentile of the population of job applicants for a range of positions on this measure," and that "[p]olice officer candidates obtain an average score of [twenty-one] on" the

---

[1] The offer of employment was also conditioned on F.S.'s completion of a medical examination, a drug use screening, and achievement of proficiency of the academic and physical requirements of the "Basic Course for Training Police Officer" prescribed by New Jersey Police Training Commission.

test. Based on those test results, Dr. Gallegos administered the Beta-4 test, which is "a completely non-verbal test of intelligence." According to Dr. Gallegos, F.S.'s "score of sixty-one" on the test is "indicative of extremely low intellectual functioning."

Dr. Gallegos did not recommend F.S. for the police officer position. Dr. Gallegos found F.S. "does not possess the psychological characteristics deemed necessary to perform the duties of the position . . . and [F.S.] is not considered to be psychologically suited to that position." Dr. Gallegos also found F.S. "evidenced problems including limited cognitive ability" based on his "very low" scores "on two tests of cognitive ability," including one test score "within the extremely low range." Dr. Gallegos noted F.S. "contradicted himself several times" during the clinical interview and F.S.'s performance on the psychological tests made it "highly unlikely that [F.S.] would get through the [police] academy or be able to perform satisfactorily in a law enforcement capacity." Based on those results and concerns, Dr. Gallegos did not recommend F.S.'s appointment as a police officer.

Following Dr. Gallegos's report, F.S. opted to undergo a psychological evaluation by Dr. Paul Fulford, a licensed psychologist, who administered a series of tests and conducted a mental status examination. In his report, Dr.

A-3793-19

Fulford noted F.S. achieved an "IQ of [ninety-six]" on "the Test of Non-Verbal Intelligence—4th Ed.," and explained that score "plac[ed] [F.S.] well within [the] normal limits and fit, intellectually, to be considered for the police training academy." Dr. Fulford further stated F.S.'s performance on other tests did not reveal any "unusual or mentally disturbed or intellectually limited choices" or "bizarre or unusual responses." Dr. Fulford reported F.S.'s "[c]oncentration was fair" and his "[j]udgment appeared good." Dr. Fulford concluded F.S. "is capable, from a multifaceted screening process," "is within normal limits academically," and is "an appropriate candidate for the Jersey City Police Department."

The City removed F.S.'s name from the eligible list for the position of police officer based on his psychological unfitness as reported by Dr. Gallegos. F.S. appealed from his removal, and his appeal was submitted to the Medical Review Panel (MRP).

The MRP reviewed Dr. Gallegos's and Dr. Fulford's reports, and the test forms, test results, and competed questionnaires from Dr. Gallegos's evaluation. F.S. also appeared before the MRP with his counsel.[2]

---

[2] Dr. Matthew Guller appeared before the MRP on behalf of the City.

A-3793-19

The MRP concluded it "did not have concerns about [F.S.'s] behavioral history," but it "was concerned about the results on the testing done by Dr. Gallegos and the quality of [F.S.'s] writing samples contained in the materials provided by" The Institute of Forensic Psychology. Based on statements F.S. made to the MRP, it was also "concerned about the extent of [F.S.'s] anxiety about heights."[3]

The MRP noted that Dr. Gallegos and Dr. Fulford "reached differing conclusions and recommendations." It recommended that F.S. "be referred for an independent evaluation" that "should be focused on a more in-depth evaluation of [F.S.'s] cognitive functioning and further exploration of his fear of heights and the potential for [that] having an impact on his functioning as a [p]olice [o]fficer."

---

[3]  The MRP noted that it explored with F.S. its concern he had a "discomfort with heights." The exact cause for the concern is not identified, but it was expressed in the context of the MRP's review of F.S.'s "responses to test items," and F.S.'s "explanation for his answers being that he must have read or misunderstood the question[s]." The MRP report states that F.S. "described himself as not strictly avoiding anything, but that there were situations when his legs would feel 'shaky.'" For example, F.S. said he would "sit high up in the stands for a sporting event, but would feel shakiness in his legs when walking down."

A-3793-19

In a January 16, 2020 decision, the Commission adopted the MRP's recommendation.[4] The Commission ordered that F.S. undergo an independent psychological evaluation by Dr. Robert Kanen.[5] The Commission further directed that Dr. Kanen's report and recommendation be provided to all parties, and that the parties be provided with the opportunity to file exceptions and cross-exceptions with the Commission.

Dr. Kanen conducted the evaluation on January 24, 2020. In his report, he noted that the purpose of the evaluation was to determine F.S.'s "current level of psychological functioning and capacity to perform the full duties of a [p]olice [o]fficer." Dr. Kanen conducted a clinical interview with, and a mental status examination of, F.S. Dr. Kanen also administered tests and reviewed Dr. Gallegos's and Dr. Fulford's reports.[6]

Dr. Kanen found no evidence F.S. suffered from an anxiety disorder or had a history of mental illness. Dr. Kanen determined F.S.'s "Full Scale IQ based on nine subtests is [seventy-one]," which is in the borderline range and

---

[4] F.S. does not appeal from the Commission's January 16, 2020 decision.

[5] The Commission directed that the City pay for the evaluation.

[6] Dr. Kanen conducted the following tests: the "Wechsler Adult Intelligence Scale, 4th edition prorated (nine subtests)"; "the Millon Clinical Multiaxial Inventory – III (MCMI – III)"; and the "Behavioral History Questionnaire."

A-3793-19

falls below ninety-seven percent of his age group. Dr. Kanen further found F.S. scored below ninety-five percent of his age group in verbal comprehension, and below ninety-six percent of his age group in perceptual reasoning.

Dr. Kanen opined that F.S. "shows significant cognitive limitations that would impair his ability to perform the full duties of a [p]olice [o]fficer." Dr. Kanen determined: F.S. has "a limited vocabulary and is likely to have difficulty using sound reasoning and judgment in decision making"; F.S. "is not adequately alert to his surroundings" and "functions best when not under time constraints and pressure"; F.S.'s "working memory score [of seventy-one] suggests difficulty focusing, concentrating[,] and placing information in short-term memory"; and F.S.'s "cognitive limitations impair his ability to deal resourcefully with the problems encountered by a [p]olice [o]fficer."

Dr. Kanen correlated F.S. cognitive limitations to F.S.'s ability to perform the functions of a police officer. Dr. Kanen noted F.S.'s "deficits in perceptual reasoning, especially under time pressure[,] significantly impair his ability to recognize, process, and react to events faced by a [p]olice [o]fficer." Moreover, F.S.'s "cognitive limitations would become especially apparent when faced with a situation where he does not know what to do" because "[h]is performance

would be limited by difficulty recognizing problems," and "[a]t his level of cognitive ability, he is at risk for being a public safety hazard."

Dr. Kanen concluded F.S.'s cognitive ability, as determined by his test scores, "is significantly below that of the average law enforcement officer." Dr. Kanen further opined F.S. is likely "to become confused and overwhelmed by moderately complex events" and "to have significant difficulties understanding the situation and responding appropriately" when confronted "with fast moving and complex situations that require sound reasoning and judgment." Dr. Kanen determined F.S. is "psychologically unsuitable for employment as a [p]olice [o]fficer."

F.S. filed exceptions to Dr. Kanen's report and recommendation, claiming he is psychologically qualified to perform the duties of a police officer and there is no basis for the disqualification of him from the position. The City did not file exceptions to Dr. Kanen's report or respond to F.S.'s exceptions.

In its final decision, the Commission detailed the general job duties and requirements of a police officer, noting police officers are entrusted with lethal weapons, are in daily contact with the public, and must be capable of responding to difficult, fast-paced, emergencies, such as "responding to a suicidal or homicidal situation or an abusive crowd." The Commission reviewed the job

specifications for the title of police officer "and the duties and abilities encompassed therein," and concluded F.S.'s psychological traits identified by Dr. Kanen adversely affect F.S.'s "ability to effectively perform the duties of the [police officer] title."

The Commission cited F.S.'s cognitive ability, as determined by Dr. Kanen, as the basis for its determination that F.S. is not qualified to perform the requisite job duties. The Commission explained that Dr. Kanen considered the reports and raw data from Dr. Gallegos and Dr. Fulford, conducted his own testing and evaluation, and determined, based on his "expertise in the field of psychology and . . . experience in evaluating the psychological suitability of hundreds of applicants for employment in law enforcement and public safety positions," that F.S. is psychologically unfit to perform the duties and responsibilities of a police officer. This appeal followed.

"Judicial review of agency determinations is limited." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Russo v. Bd. of Trs., Police

& Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).  In reviewing the agency's

decision, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

"A reviewing court 'must be mindful of, and deferential to, the agency's

expertise and superior knowledge of a particular field.'"  Id. at 158 (quoting

Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10

(2009)).  We "may not substitute [our] own judgment for the agency's, even

though [we] might have reached a different result."  Stallworth, 208 N.J. at 194

(quoting In re Carter, 191 N.J. 474, 483 (2007)).  "[A] reviewing court is 'in no

way bound by [an] agency's interpretation of a statute or its determination of a

strictly legal issue.'"  Allstars Auto Grp., 234 N.J. at 158 (alteration in original)

(quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B.,

207 N.J. 294, 302 (2011)).

F.S. argues the Commission's decision is arbitrary, capricious, and unreasonable for three reasons. First, F.S. claims the Commission's decision "is simply not supported by the record." Second, F.S asserts the City had the burden of establishing that he was psychologically unfit, but the burden was impermissibly shifted to the Commission and Dr. Kanen. Third, he contends that documents, including his writing samples and testing data from Dr. Gallegos that were considered by the MRP and Dr. Kanen, were never provided to him. We find the arguments are without sufficient merit to warrant extended discussion in a written opinion, R. 2:11-3(e)(2). We add only the following comments.

The Commission has the authority to remove a candidate from an eligible list if the evidence shows the person is "psychologically unfit to perform effectively the duties of the title." N.J.A.C. 4A:4-6.1(a)(3); see also N.J.A.C. 4A:4-6.5 (authorizing an appointing authority to request the removal of an "eligible name . . . from an eligible list due to disqualification for . . . psychological reasons which would preclude the eligible from effectively performing the duties of the title"). "The use of psychological tests to predict or evaluate employee job performance is a recognized part of the American workplace." In re Vey, 124 N.J. 534, 540 (1991).

A-3793-19

The Commission's determination F.S. is psychologically unfit to perform the duties of a police officer is supported by overwhelming evidence, including the results of the psychological tests performed by two separate psychologists. The City's expert, Dr. Gallegos, and the psychologist appointed by the Commission to conduct an independent psychological evaluation, Dr. Kanen, reached almost identical conclusions following their administration of psychological tests and interviews with F.S.

They each determined F.S.'s cognitive deficits rendered him unable to safely and competently satisfy the difficult demands placed on police officers and to perform the essential duties and requirements of the title. To be sure, there was conflicting evidence, and F.S. contends the Commission should have adopted Dr. Fulford's opinion, but our review is limited to a determination of whether sufficient credible evidence supported the Commission's decision, and clearly there was. See Allstars Auto Grp., 234 N.J. at 157; see also Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374, 401-02 (App. Div. 2017) (stating "the determination of disputed facts, including credibility determinations, is not the function of this court").

F.S.'s claim the Commission impermissibly shifted the burden of proof is also devoid of merit. F.S. argues the improper burden shifting occurred because

the City did not file exceptions to the MRP report and the Commission relied on the psychologist it appointed, Dr. Kanen, as the basis for its final decision.

The appointing authority has the burden of establishing the psychological unfitness of a candidate to support the removal of the candidate from the eligible list. N.J.A.C. 4A:4-6.3(b); see also Vey, 124 N.J. at 540 (explaining "[t]he appointing authority bears the burden of proving that the candidate meets the regulatory description and is subject to removal for psychological unfitness"). The City satisfied its burden here.

Dr. Gallegos's report established F.S.'s psychological unfitness. The City properly relied on the report as support for its request to remove F.S. from the eligible list, see N.J.A.C. 4A:4-6.5(a)(1), and the Commission referred F.S.'s appeal from his removal from the list to the MRP, see N.J.A.C. 4A:4-6.5(g). In accordance with its regulations, the Commission then followed the MRP's recommendation and referred F.S. "for an independent professional evaluation" by Dr. Kanen. N.J.A.C. 4A:4-6.5(g)(4).

We find nothing in the Commission's strict adherence to its regulations that impermissibly shifted the burden to F.S., and there was sufficient credible evidence supporting the Commission's determination F.S. is psychologically unfit to perform the duties of a police officer. The City's decision not to file

exceptions to Dr. Kanen's report and recommendation did not shift the burden of proof. There was no requirement that the City file exceptions, and the City's decision not to do so is clearly reflective of its acceptance of Dr. Kanen's report's findings and recommendation, which mirrored those made by the City's expert, Dr. Gallegos.

We also reject F.S.'s conclusory assertion he was not provided with the documents and records relied on by the MRP and Dr. Kanen. The argument is untethered to any citation to the record. Indeed, F.S. does not point to any evidence that he complained about the City's purported failure to provide necessary documents or records. The City provides correspondence demonstrating it supplied discovery to F.S.'s counsel, and F.S. does not offer any argument or evidence that he suffered prejudice from any purported failure of the City to provide documents or records during the proceeding.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14